**HYMAN v. HELVERING, Commissioner of Internal Revenue.**

**No. 6134.**

Court of Appeals of the District of Columbia.

Argued April 9, 1934.

Decided May 7, 1934.

R. Kemp Slaughter and Hugh C. Bickford, both of Washington, D. C., for petitioner.

Sewall Key, Morton K. Rothschild, E. Barrett Prettyman, and Shelby S. Faulkner, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Petitioner owned all but 2 shares of the capital stock of George Hyman Construction Company, a Maryland corporation. The corporation was engaged in the business of general contractor in the construction of public and private buildings. It was incorporated after March 1, 1913, and prior to January 1, 1928, and had issued $200,000 of capital stock divided into 2,000 shares. Petitioner paid into the company in cash $199,800 for the stock issued to him. As of December 31, 1927, the corporation had an accumulated earned surplus of one hundred nineteen thousand some odd dollars, and as of December 31, 1928, one hundred and nine thousand some odd dollars.

Petitioner decided it had too many eggs in one basket and that it was desirable it should dispose of that portion of its assets not necessary in the construction business. The property which it proposed to rid itself of consisted of real estate, stocks, and bonds, and so on December 11, 1928, petitioner caused George Hyman Properties, Inc., to be organized under the laws of Maryland with a capital of 2,000 shares of stock of the par value of $100 each. The next day the construction company made its check to petitioner in the sum of $195,000 in consideration of the delivery to it by petitioner of 1,950 shares of stock, which it thereupon retired and canceled, leaving only 50 shares outstanding, of which petitioner held 48. Petitioner turned over the $195,000 to the Hyman Properties Corporation, which in turn paid it to the construction company for the real estate, stocks, and bonds which petitioner had previously decided it was desirable construction company should no longer continue to hold. The result of these transactions was that construction company thereafter had an issued capital stock of $5,000 and other assets of book value of one hundred and nine thousand odd dollars, and Hyman Properties Company had an issued capital stock of $195,000 and real estate and bonds and stocks presumably equal in value to its capitalization, and petitioner was the owner of 48 of the 50 shares of stock of construction company and equally the owner of all, or practically all, of the stock of the properties company.

Petitioner in his income tax return treated the transaction as nontaxable on the theory

that the payment to him of $195,000 by the construction company was in redemption and cancellation of the 1,950 shares of stock which he had delivered to it, and since the amount received by him per share was equal only to the price paid by him per share, there was neither gain nor loss. The Commissioner, however, asserted a deficiency to the extent of the earned surplus of the construction company at the time of the transaction. Petitioner appealed to the Board of Tax Appeals, which sustained the deficiency, and this petition for review followed.

The applicable statute is section 115 of the Revenue Act of 1928, 45 Stat. 822 (26 USCA § 2115), as follows:

"(a) The term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913. * * *

"(c) Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * *

"(g) If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. * * *

" (h) As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

The Treasury Regulations are contained in Regulations 74, issued under the Revenue Act of 1928, and particularly article 629, but, as we think, they are not helpful in deciding the question. .

The issue is whether the amount of money received by petitioner in redemption of the shares of stock delivered by him to the corporation is a taxable dividend within the purview of (g) of section 115 (26 USCA § 2115 (g); and the answer to this question depends upon whether or not the transaction in point of time and manner was such a distribution as to make it essentially the equivalent of a taxable dividend.

The term "dividends" is defined by the Treasury Regulations (article 621, Regulations 74) to be any distribution in the ordinary course of business, even though extraordinary in amount, and by the act (sec. 115 (a), supra) to be any distribution whether in money or other property out of its earnings or profits accumulated after February 28, 1913.

■ To determine the question we must look to the stipulated facts. These show a corporation wholly owned and controlled by petitioner which in the course of years but after 1913 had accumulated profits of over $109,000, represented largely by investments in stocks, bonds, and real estate. Petitioner in good faith but to avoid the risk of loss of these profits as the result of possible future improvident building contracts, decided to put them out of harm's way by the incorporation of another company to be owned and controlled by him to the same extent; and to accomplish this he reduced the capitalization of the construction company 97½ per cent., leaving it still with sufficient assets, property, and equipment paraphernalia to carry on the business precisely as it had been carried on prior to the transaction to which we refer. It is obvious in this view there was no complete liquidation of the company in the ordinarily accepted meaning of the term, which, as we said in Hellman v. Helvering, 63 App. D. C. 18, 68 F.(2d) 763, 765, means an act or an operation in winding up the affairs of a firm or corporation, a settling with its debtors and creditors, and an appropriation and distribution among its stockholders ratably of the amount of the profit and loss. On the other hand, what was done may perhaps be described as a recapitalization by partial liquidation.

■ But, in our view, the answer within the intendment of (g) turns not so much upon the question of whether there was or was not liquidation as upon the result. That is to say, if the distribution and cancellation, viewed fairly, made it essentially equivalent to a distribution of profits, it is taxable. The Commissioner and the Board have both held that what occurred was essentially equivalent to a distribution of profits. We have re-examined the facts to see if the conclusion is correct. Undoubtedly the tax law recognizes a distinction between liquidating dividends and dividends out of profits, and provides a

different basis on which to tax them. The purpose of Congress in the inclusion of (g) was to narrow the distinction to the end that corporations might not by resort to the device of stock redemption or cancellation make a distribution to its shareholders essentially resulting in a division of profits. In both the House and Senate reports, and in the conference reports, an illustration is given showing the congressional purpose. The illustration supposes, under the tax laws prior to the amendment involved here, the case of two men holding practically the entire stock of a corporation for which each paid $50,000. The corporation, having accumulated a surplus of $50,000 above its cash capital, buys from the stockholders for cash one-half of the stock held by them and cancels it, and the payment is nontaxable because it is a partial redemption of stock. To change this result and make it taxable (g) was written and incorporated into the law. Granted the illustration is an apt one and the object sought accomplished, it will be seen how nearly it fits the facts of this case, for here we have a corporation with large accumulated earnings, which, by means of a purchase of a part of its stock, it transfers to its single stockholder, leaving the corporation precisely in the condition in which it was prior to the transfer, except that its earnings have been distributed to its stockholder without having disturbed his ownership and control of the corporation.

On this statement of facts we need not go to the extent of saying that Congress in the enactment of (g) intended to tax as a dividend every distribution of earnings. The use in the section of the words "at such time and in such manner" must be given some meaning, and we think they show a purpose to qualify the provision and to make time and circumstance elements to be considered in the determination. But, nevertheless, we think it is clear that if a corporation declares a stock dividend today and a few months later redeems it by purchase out of earnings, as was the case in Robinson v. Commissioner, 69 F.(2d) 972, decided by the Fifth Circuit April 2, 1934, the time element is a factor tending to show that the distribution was a device to avoid the tax. And so also if a corporation invests earnings in plant and equipment, which, in later years, in a policy of contraction of business activities, it decides to sell and to divide the proceeds among its shareholders, the distribution is none the less a dividend, though the device of canceling some of the outstanding shares be adopted as a method of accomplishing the end sought.

On the other hand, if the fund for distribution was a part of the capital contributed by the shareholders to be used in the actual business of the corporation, its distribution in whole or in part would, of course, be liquidation, and the same is true of earnings in good faith converted into capital by the declaration of stock dividends, but it is not also true of earnings invested in property used in the business, for in the last-named case the conversion does not create capital and the manner of the utilization can be changed by the corporation's action and the fund wholly withdrawn, and in such case it would return to its original condition, and in that condition distributed to shareholders, would be a dividend and not a liquidation.

In the present case, if the distribution and cancellation had precisely and exactly equaled the earned and accumulated profits, it could hardly be contended that the manner of the distribution evidenced other than a plan to distribute earnings. Here, however, it is contended that because more stock was redeemed than the total surplus the distribution was of capital and not of earnings, but we think this does not follow, except as to the excess, and the excess the Commissioner did not tax. As to the portion of the distribution taxed, the presumptions are all in favor of the Commissioner's holding; first, because section 115 (b) (26 USCA § 2115 (b) declares "for the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits," and, secondly, because "capital" is a fund held in trust for the benefit of creditors and can only be returned to the shareholders by proper legislative action. It is frequently said by courts once capital always capital. In this respect it is different from profits, which are wholly within the discretionary control of the directors. In this case the record shows that petitioner offered to sell to his wholly owned corporation 1,950 shares of stock at par. The corporation accepted the offer, and subsequently by amendment reduced its authorized capital stock from $200,000 to $5,000. When the transaction occurred, it had on hand in excess of $100,000 of earnings which it had converted into one or another class of property not needed in its business. Its primary purpose was the sale of this property. Nothing that appears indicates that it was intending either to wind up or curtail its regular corporate activities. It is fair under the circumstances to assume that the cancellation of its stock was to the extent of the surplus earn-

ings accomplished out of that fund, and viewed in that aspect it was clearly a dividend within the meaning of paragraph (g).

In reaching our conclusion, we have examined the cases of Hill v. Commissioner (C. C. A. 4) 66 F.(2d) 45; Commissioner v. Brown (C. C. A. 7) 69 F.(2d) 602, decided March 22, 1934; Robinson v. Commissioner (C. C. A. 5) 69 F.(2d) 972, decided April 2, 1934; and Commissioner v. Babson (C. C. A. 7) 70 F.(2d) 304, decided April 9, 1934; but we think they throw no particular light on the subject, for the reason that each was decided on its own particular facts.

The Hill Case involved the redemption of a portion of a corporation's preferred stock issue. The Board had held that while there was no proof of the existence of a relation between the issuance and the redemption, scrutiny of the time and manner of the redemption was convincing of the fact that the distribution was equivalent to a taxable dividend. Precisely how or why is left unanswered. The Fourth Circuit Court of Appeals affirmed the Board on this finding of fact.

In the Brown Case there had been an exchange in 1922 of old common stock for new common and preferred stock, followed in 1925 by the redemption of the preferred stock. In passing on the question whether this was a dividend or a liquidation, the Seventh Circuit held that section 201, subd. (g), Revenue Act 1926 (26 USCA § 932 (g) does not turn every partial liquidation into a dividend whenever there are undistributed earnings in the corporation but only when the distribution is made under specified circumstances; in other words, that it is the time and manner of the liquidation and not the existence of undistributed earnings which is the test, and the court held the facts found by the Board in that case did not justify the conclusion the redemption occurred under circumstances of time and manner sufficient to make it the equivalent of a taxable dividend.

The Robinson Case involved the distribution of new stock by the Coca Cola Company with the simultaneous offer on the part of the corporation to purchase from the stockholders 20 per cent. of the stock so issued at the time of issue at $50 per share. The facts there were that the corporation had a surplus of earnings in excess of $14,000,000, $5,000,000 of which had been transferred and assigned to the stock distributed as a dividend, and this was used for the repurchase of so much of the stock as was offered for sale. The holding was that this amounted to a pro rata distribution of cash earnings, as doubtless it did.

The Babson Case involved an Illinois corporation which had from time to time over a period of ten to twelve years tremendously increased its capital structure by issuing stock dividends out of earnings. Not only had it increased its capitalization but it had increased its business activities by going into new lines. After the last increase in capitalization, it was found that the expansion of its business was unprofitable and a process of shrinking was adopted, and in the sale of assets to carry through this program large surpluses were accumulated, which were distributed to stockholders. Some of them occurred prior to 1926, and paragraph (g) of section 201 of the Act of 1926 (26 USCA § 932 (g) had, of course, no application to such payments. As to those after 1926, the Board having decided such payments were in the peculiar facts shown capital transactions, the court sustained the Board on the ground there was substantial evidence on which the Board's decision was based.

It will thus be seen that in none of the cases was any definite rule of construction laid down in respect to paragraph (g) which we are at liberty to adopt, except that the applicability of the section turns upon the fact whether the distribution is of earnings through the guise of stock redemption. Here, as we have seen, there are ample grounds to place the transaction in that class.

Affirmed.