## PARKER v. UNITED STATES.

### No. 5897.

Circuit Court of Appeals, Seventh Circuit.

Feb. 24, 1937.

M. O. Mouat, O. A. Oestreich, and R. G. Cunningham, all of Janesville, Wis., for appellant.

Robert H. Jackson, Asst. Atty. Gen., J. Louis Monarch and Donald J. Marran, Sp. Assts. to Atty. Gen., John J. Boyle, U. S. Atty., and Harold E. Hanson, Asst. to U. S. Atty., both of Madison, Wis., and M. H. Eustace, of Washington, D. C., for appellee.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

The appellant, a Federal taxpayer, appeals from the judgment of the District Court overruling his claim for a refund asserted by him to be an overpayment of his 1929 taxes. The Commissioner held that the redemption of certain preferred stock was the equivalent of a taxable dividend.

Payment of the tax was made by the taxpayer under protest and after demand, etc. for its repayment this action was begun in the District Court. A jury was waived, and the Court made special findings and conclusions of law. From an adverse judgment, the taxpayer has appealed.

EVANS, Circuit Judge.

The sole question is the correctness of the conclusion, upon facts not in dispute, to the effect that the redemption of the preferred stock was "essentially equivalent to the distribution of a taxable dividend" and therefore taxable as such.

The Facts: Taxpayer was the owner of 175 shares of the preferred stock of the Parker Pen Company, which were redeemed for $18,375 in 1929. The stock was acquired in August, 1920, July, 1922, and January, 1925. In his 1929 return, treating the redemption as a sale, Parker reported an income resulting therefrom of $12,846.67 which was the difference between the amount received and the cost to him of $5,528.83.

As bearing on the correct amount of tax appellant should pay and as bearing directly on the issue determinative of liability, the history of the Parker Pen Company's origin and growth is illuminating. Two men, Mr. Parker and Mr. Palmer, started the enterprise in 1891 and its success and growth were unusual. Each owned one-half of the stock, and the same structure and ownership continued through its spectacular growth down to 1920 when its capital structure was changed. Following is the record of changes then and thereafter made:

1920—1,000 shares of common stock
     50%—George Parker
     50%—W. F. Palmer
1921—5,000 shares common stock, $100 par value
    (a) 4,000 shares issued as stock dividend, half to each, Parker and Palmer
   5,000 shares preferred stock, 7%, par value $100
    (b) 2500 shares sold to public
    (c) 2500 shares never issued
   5,000 shares preferred stock, second issue
    (d) 2750 shares issued as purchase price for property conveyed to company
    (e) 2250 shares issued as a stock dividend.

The shares above designated as (b) were retired before December, 1925, out of earnings as per articles of incorporation, and thereupon the preferred stock, second issue, became the only preferred stock, and it had been provided that "arrangement must be

made by the corporation for its retirement annually based on earnings."

1925—15,000 shares preferred stock of par value of $100
    (d) and (e)—the 5,000 shares of second preferred were exchanged for this new stock, share for share of this stock, with 1% less interest rate. Appellant received 175 shares of this stock.
    (f) 2,000 shares sold to the public.
    (g) 3,000 shares issued as stock dividend to common stockholders.
    (h) 5,000 shares never issued.

The articles of incorporation were amended at the time of the issuance of the new preferred stock in 1925 to provide for its retirement out of earnings.[1]

No dividends were to be paid on common stock if the preferred stock redemption account were not taken care of. All the preferred stock (which had not theretofore been retired) was retired in 1929 because of the desire of the purchaser of three-fourths of the common stock to have no preferred stock outstanding and because of its belief that the outstanding preferred stock would affect the sale of the common stock to the public. To give an exact picture of the financial details of the company's actions, we have set forth in the margin the company's earnings and dividends.[2]

The statute invoked for the taxation of the proceeds received upon redemption of the stock reads as follows:

Section 115(g) Revenue Act of 1928. "*Redemption of stock.* If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In the case of the cancellation or redemption of stock not issued as a stock dividend this subsection shall apply only if the cancellation or redemption is made after January 1, 1926." 26 U.S.C. A. § 115(g) and note.

[1] "A preferred stock redemption account for the purpose of accomplishing annually the retirement of preferred stock shall be set up out of surplus of the corporation derived from the net profits accruing after December 31, 1925, after the payment of all required dividends on preferred stock. For that purpose on or before the 1st day of July, 1927, and thereafter on or before the 1st day of July annually so long as any preferred stock of the corporation remains outstanding, there shall be set up out of surplus and credited to an account to be called Preferred Stock Redemption Account for the retirement of preferred stock as herein provided, an amount at least equal to 5 per cent. of the maximum amount, of preferred stock at any time theretofore outstanding, plus a sum sufficient to cover the premium of five dollars to be paid on each and every share of stock to be retired as hereinafter set forth."

[2]

| | | Dividends | | |
|---|---|---|---|---|
| Earnings | | Preferred stock | Preferred stock second issue | Common stock |
| 1913 | $17,012.77 | | | |
| 1914 | 11,814.45 | | | |
| 1915 | 1,244.81 | | | |
| 1916 | 25,177.53 | | | |
| 1917 | 46,675.44 | | | |
| 1918 | 31,780.81 | | | |
| 1919 | 177,156.42 | | | |
| 1920 | 104,410.41 | $ 6,377.72 | $16,666.67 | None |
| 1921 | 10,675.58 | 20,000.00 | 40,000.00 | $10,000.00 |
| 1922 | 319,492.13 | 19,157.13 | 40,000.00 | 20,000.00 |
| 1923 | 698,092.93 | 18,333.34 | 40,000.00 | 50,000.00 |
| 1924 | 1,008,022.12 | 14,491.87 | 40,000.00 | 100,000.00 |
| 1925 | 936,371.67 | 12,734.01 | 33,333.33 | 204,166.66 |
| 1926 | 928,299.49 | 69,999.99 | | 245,000.00 |
| 1927 | 785,744.82 | 66,308.85 | | 420,000.00 |
| 1928 | 1,054,653.43 | 45,235.86 | [1] | 270,000.00 |
| 1929 | 929,338.38 | 194.18 | | 496,576.46 |

[1] Dividends on preferred and on common.

Our question is one of fact—Was the redemption of appellant's stock "essentially equivalent to a distribution of a taxable dividend"?

The statute in question has been before the courts on various occasions. The distributions in some instances were found to be taxable dividends.[3] In other cases the facts warranted a finding that the distributions were not equivalent to a dividend.[4] The conclusion we draw from a reading of the statute and the decisions is that each case must be determined by the facts appearing therein.

■ We therefore pursue our inquiry into the facts in this case, which fortunately are not in dispute, although some conflicting inferences of minor importance may be deducible from portions of the testimony which were almost an agreed statement of facts. The District Judge made no finding of fact on this issue, but under the circumstances treated the question as one in the nature of a conclusion which under all the circumstances is about as correct and satisfactory as to call the issue one of fact. In either case (whether a fact or a conclusion) we do not feel bound by the determination of the District Judge although according that decision much weight. We feel free to reach an independent conclusion because the facts were not in dispute and no advantage was possessed by the trial court due to his seeing and hearing witnesses.

■ If the stock in question had been received by the appellant directly from the company as a stock dividend, we would not disagree with the Commissioner in the conclusion he has reached. But the appellant herein was a third party, one who acquired his stock from another who presumably received it originally as a stock dividend. To hold that the redemption is a dividend against the original recipient of the stock and not a dividend as against the holder who acquired it for full value from the original recipient may seem somewhat paradoxical. Nevertheless, we think this is the only fair and just construction and application of the statute that can be given it.

To illustrate,—let us suppose that in 1925 a corporation X declared a preferred stock dividend retirable at par which was received in whole or in part by A and B. Two years later X having had profitable years retires all this stock at the stipulated retirement price of $100 per share, regular annual dividends having been paid during the two years it was outstanding. Upon such a statement of facts, the Commissioner could have properly held the redemption was taxable as a dividend. But, if A and B had sold part of their preferred stock by them received from X to C for par, how could the Commissioner justify the ruling that the redemption of this stock was dividend as to C? In other words, C bought stock for par. It was redeemable at par and was actually redeemed at par. C received exactly what he paid for the stock. Appellee argues for a construction of this section so as to impose a gain or income tax on the whole amount of the selling price on the theory of its being a dividend. To so hold would be unfair and quite contrary to the policy and spirit displayed by the Internal Revenue Department in construing various other sections of the various Revenue Acts.

Support for our conclusion appears in the section under consideration. The redemption of the stock was not in the form of a stock dividend. It differed considerably from the usual stock dividend. It was a redemption of outstanding stock. There is no inference or presumption which arises solely from a redemption of stock that such redemption is a dividend. It and other factors may create irresistible support in favor of such a conclusion but it requires facts other than that of redemption of outstanding stock to justify such a conclusion. Nor does the statute require a redemption to be the declaration of a dividend as such. It is sufficient if the cancellation or redemption in whole or in part be *"essentially equivalent to the distribution of a taxable dividend."*

3 McGuire v. Commissioner, 84 F.(2d) 431 (C.C.A. 7); Brown v. Commissioner, 79 F.(2d) 73 (C.C.A. 3); Randolph v. Commissioner, 76 F.(2d) 472 (C.C.A. 8); Robinson v. Commissioner, 69 F.(2d) 972 (C.C.A. 5); Hill v. Commissioner, 66 F.(2d) 45 (C.C.A. 4).

4 Commissioner v. Rockwood, 82 F.(2d) 359 (C.C.A. 7); Commissioner v. Brown, 69 F.(2d) 602 (C.C.A. 7); Commissioner v. Babson, 70 F.(2d) 304, 307 (C.C.A. 7); Commissioner v. Ahlborn, 77 F.(2d) 700 (C.C.A. 3); Hyman v. Helvering, Commissioner, 63 App.D.C. 221, 71 F.(2d) 342; Commissioner v. Cordingley, 78 F. (2d) 118 (C.C.A. 1); Commissioner v. Quackenbos, 78 F.(2d) 156 (C.C.A. 2).

Our finding and conclusion is that as against appellant the redemption was not equivalent to a dividend. As to him the difference between what he received for the stock on its redemption less the amount he paid for it is taxable income upon which he should and did pay his income tax. The total amount received by him upon the redemption of stock, however, should not be taxed against him as a dividend.

The judgment of the District Court is reversed with directions to proceed in accordance with the views here expressed.