## WILCOX et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10003.

Circuit Court of Appeals, Ninth Circuit.

July 9, 1943.

Urban E. Wild and Milton Cades, both of Honolulu, T.H., for petitioners.

Samuel O. Clark, Jr., Asst. U. S. Atty. Gen., and Sewall Key, Carleton Fox, J. Louis Monarch, and F. E. Youngman, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

Respondent, the Commissioner of Internal Revenue, determined that there were deficiencies in respect of the income taxes of petitioners, Gaylord P. Wilcox, Elsie H. Wilcox and Mabel I. Wilcox, for 1934 and 1935, as follows:

|  | 1934 | 1935 |
|---|---|---|
| Gaylord P. Wilcox, | $2,732.68 | $37,624.39 |
| Elsie H. Wilcox, | 1,938.54 | 6,061.32 |
| Mabel I. Wilcox, | 2,515.11 | 7,759.05 |

Petitioners separately petitioned the Board of Tax Appeals, now called the Tax Court of the United States, for redetermination of the claimed deficiencies. The three proceedings were consolidated for hearing, and the Board, after hearing them, entered three decisions, each of which sustained, in part, respondent's determination. 43 B.T.A. 931. As redetermined by the Board, the deficiencies were as follows:

|  | 1934 | 1935 |
|---|---|---|
| Gaylord P. Wilcox, | $2,319.13 | $36,578.22 |
| Elsie H. Wilcox | 1,598.93 | 5,222.42 |
| Mabel I. Wilcox, | 2,132.65 | 6,734.41 |

Petitioners have jointly petitioned this court to review and reverse the three decisions. Questions presented are (1) whether a distribution which the Inter-Island Steam Navigation Company, Limited, hereafter called Inter-Island, made to its shareholders in 1934 was a taxable dividend; (2) whether a distribution which the Pacific Guano & Fertilizer Company, Limited, hereafter called Pacific, made to its shareholders in 1935 was a taxable

dividend; and (3) whether income received by the Gaylord P. Wilcox Trust in 1934 and 1935 was taxable to Gaylord P. Wilcox.

First. Inter-Island (a Hawaii corporation) was organized in 1883 and, at all pertinent times, was engaged in the business of owning and operating steam vessels, barges, dry docks, a marine railway, machine shops, carpenter shops and blacksmith shops and in the business of buying and selling coal. On and prior to November 16, 1934, Inter-Island had outstanding 325,-000 shares of stock, of which Gaylord P. Wilcox held 4,000 shares, Elsie H. Wilcox 2,533 shares and Mabel I. Wilcox 2,683 shares. On November 16, 1934, Inter-Island's shareholders adopted a resolution reading, in part, as follows:

"Whereas, Inter-Island * * * now has an authorized capital stock of $6,500,-000, represented by 325,000 shares * * * of the par value of $20 per share, and its surplus is adequate to provide all necessary reserves so that the Company [Inter-Island] may effect a return of $2 per share to its stockholders as a capital distribution in partial liquidation of its stock:

"Be it resolved by the stockholders of the Company * * * that the capital stock of the Company be reduced from a total amount of $6,500,000, divided into 325,000 shares of a par value of $20 per share, to the amount of $5,850,000, divided into 325,000 shares of a par value of $18 per share, in the manner following, namely: (a) by the reduction of the par value of all of its shares of stock from $20 to $18 per share, and (b) by the distribution to the stockholders of the amount of capital reduction so effected, to-wit, $650,000, at the rate of $2 per share, as a partial liquidation of the Company's capital stock * * *."

Accordingly, on December 22, 1934, Inter-Island distributed to its shareholders $650,-000, of which Gaylord P. Wilcox received $8,000, Elsie H. Wilcox $5,066 and Mabel I. Wilcox $5,366. The question now to be considered is whether this distribution was a taxable dividend.

The applicable statute is the Revenue Act of 1934. Section 11 of the Act imposes "upon the net income of every individual a normal tax of 4 per centum of the amount of the net income in excess of the credits against net income provided in section 25." Section 12(a) defines "surtax net income" as "the amount of the net income in excess

of the credits against net income provided in section 25(b)." Section 12(b) imposes a surtax "upon the surtax net income of every individual." Section 21 defines "net income" as "the gross income computed under section 22, less the deductions allowed by section 23." Section 22(a) defines "gross income" as including, inter alia, "income derived from * * * dividends." Section 22(d) provides: "Distributions by corporations shall be taxable to the shareholders as provided in section 115." Section 23 allows certain deductions from gross income in computing net income, but these do not include any distribution by a corporation to an individual shareholder. Section 25 comprises § 25(a) and § 25(b). Section 25(a) provides that, "for the purpose of the normal tax, but not for the surtax," there shall be allowed as a credit against net income "The amount received as dividends from a domestic corporation which is subject to taxation under this title [§§ 1–322]." [1] Section 25(b) provides that, "for the purposes of the normal tax and the surtax," 26 U.S.C.A. Int. Rev.Acts, pages 665, 669, 671, 676, 677, certain credits against net income shall be allowed, but these do not include any distribution by a corporation. Section 115 provides:

"(a) *Definition of Dividend.* The term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

"(b) *Source of Distributions.* For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *

"(c) *Distributions in Liquidation.* Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * *

"(g) *Redemption of Stock.* If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in

---

[1] Inter-Island is a domestic corporation and is taxable under this title.

part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that [it] represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. * * *

"(i) *Definition of Partial Liquidation.* As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." 26 U.S.C.A. Int.Rev.Acts, pp. 703, 704.

Petitioners contend that the distribution by Inter-Island was a distribution in partial liquidation of Inter-Island,[2] which is to say, a distribution in complete cancellation or redemption of a part of Inter-Island's stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of Inter-Island's stock,[3] and that such cancellation or redemption was not at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend.[4]

The Board did not find that the distribution by Inter-Island was a distribution in partial liquidation of Inter-Island, or a distribution in complete cancellation or redemption of a part of Inter-Island's stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of Inter-Island's stock; nor did the evidence require such a finding. The Board found [43 B.T.A. 935]:

"For a number of years Inter-Island's business operations have been highly successful.[5] In each of the years 1913 to 1934, inclusive, it distributed large cash dividends. * * *

"In formulating the plan for the reduction of the par value of the stock and the distribution of $2 per share to the stock-

holders, as set forth in the resolution of November 16, 1934, the 'tax angle' of the transaction was considered and was discussed with the company's [Inter-Island's] tax counsel.

"There was no intention on the part of the officers or directors of Inter-Island in 1934 to curtail the company's business operations to any material extent. On the contrary, the policy of the corporation [Inter-Island] was to continue in business and to expand its operations as conditions should warrant. * * *

"The balance sheet of Inter-Island at December 31, 1933, shows a surplus of $520,374.28. But the company's insurance reserves at the same date were in the amount of $1,350,000. These did not represent any liability. They simply represented an appropriation of a part of the surplus of the company to provide against losses which might be sustained in the future. * * * The insurance reserves were merely a part of the company's surplus. It must be held therefore that Inter-Island could have made the distribution in 1934 from surplus had it desired to do so. * * *

"The distribution made by Inter-Island in 1934 and here in question was not one of a series of distributions in 'complete cancellation or redemption' of all or any part of the shares of stock of the corporation. * * *

"In the instant case there was no plan afoot and there was no intention on the part of the directors and stockholders of Inter-Island to wind up the affairs of that corporation. All that was undertaken was to distribute a portion of the accumulated earnings and profits of the company which were not needed in the normal course of its business. * * * [There] was no undertaking or intention to liquidate the corporation."

■■ These findings are supported by substantial evidence and hence are conclusive.[6] Upon the facts found, the Board

[2] See § 115(c).

[3] See § 115(i).

[4] See § 115(g).

[5] The Board incorporated in its findings a statement of earnings and profits compiled from Inter-Island's reports to its shareholders for 1932, 1933 and 1934. Therefrom it appears that Inter-Island's net earnings and profits were approximately $548,000 in 1932, $777,500 in 1933 and $806,500 in 1934.

[6] Phillips v. Commissioner, 283 U.S. 589, 600, 51 S.Ct. 608, 75 L.Ed. 1289; Burnet v. Leininger, 285 U.S. 136, 138, 52 S.Ct. 345, 76 L.Ed. 665; Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343; Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 40, 57 S.Ct. 324, 81 L.Ed. 491; Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 490, 57 S.Ct. 569, 81 L.Ed. 755; Palmer v. Commissioner, 302 U.S. 63, 70, 58 S.Ct.

rightly concluded that the distribution by Inter-Island was not a distribution in partial liquidation of Inter-Island, but was a taxable dividend.[7]

The resolution of November 16, 1934, under which the distribution in question was made, did not provide for cancellation or redemption of Inter-Island's stock or any part or portion thereof.[8] It said nothing about cancellation or redemption. It merely provided for reduction of the par value of the stock from $20 to $18 a share and for distribution of $2 a share —a distribution which admittedly was made out of earnings and profits accumulated after February 28, 1913.[9] Nothing else occurred. We agree with the Board that there was no cancellation or redemption of stock. If, contrary to our view, there was a cancellation or redemption, it was, we think, at such time and in such manner as to make the distribution and cancellation or redemption essentially equivalent to the distribution of a taxable dividend; and, since the entire amount so distributed represented a distribution of earnings or profits accumulated after February 28, 1913, it was properly treated as a taxable dividend.[10]

It is immaterial that some of petitioner's shares of Inter-Island stock were acquired as stock dividends, and that some were later acquired by purchase; for, regardless of the time or manner of their acquisition, all the shares were entitled to be, and all were, treated alike in the 1934 distribution. As to all the shares, therefore, that distribution was a taxable dividend.

Second. Pacific (a Hawaii corporation) was organized in 1890 and, at all pertinent times, was engaged in the business of procuring, preparing, manufacturing, transporting and dealing in phosphates and other fertilizing materials. On and prior to August 22, 1935, Pacific had outstanding 53,-750 shares of stock, of which Gaylord P. Wilcox held 1,810 shares, Elsie H. Wilcox 440 shares and Mabel I. Wilcox 470 shares. On August 22, 1935, Pacific's shareholders authorized a reduction in the par value of its stock from $100 to $70 a share—a total reduction of $1,612,500. Accordingly, on September 30, 1935, Pacific distributed to its shareholders $1,612,500, of which Gaylord P. Wilcox received $54,-300, Elsie H. Wilcox $13,200 and Mabel I. Wilcox $14,100. The question now to be considered is whether this distribution was a taxable dividend.

The applicable statute is the Revenue Act of 1934, the pertinent sections of which are cited above. Petitioners contend that the distribution by Pacific was a distribution in partial liquidation of Pacific,[11] which is to say, a distribution in complete cancellation or redemption of a part of Pacific's stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of Pacific's stock,[12] and that such cancellation or redemption was not at such time and in such manner as to make the distribution and cancellation or redemption essentially equivalent to the distribution of a taxable dividend.[13]

The Board did not find that the distribution by Pacific was a distribution in partial liquidation of Pacific, or a distribution in complete cancellation or redemption of a

67, 82 L.Ed. 50; Helvering v. National Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346; Colorado National Bank v. Commissioner, 305 U.S. 23, 25, 59 S.Ct. 48, 83 L.Ed. 20; Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 84 L.Ed. 226; Helvering v. Kehoe, 309 U.S. 277, 279, 60 S.Ct. 549, 84 L.Ed. 751; Commissioner v. Eldridge, 9 Cir., 79 F.2d 629, 630, 102 A.L.R. 500; Commissioner v. Bank of California, 9 Cir., 80 F.2d 389, 390; Holmby Corp. v. Commissioner, 9 Cir., 83 F.2d 548, 549; Bear Gulch Water Co. v. Commissioner, 9 Cir., 116 F.2d 975, 977; Wilkerson Daily Corp. v. Commissioner, 9 Cir., 125 F.2d 998, 1000.

7 Cf. Faris v. Helvering, 9 Cir., 71 F.2d 610; Leland v. Commissioner, 1 Cir., 50 F.2d 523; Hyman v. Helvering, 63 App.D.C. 221, 71 F.2d 342; Brown v. Commissioner, 3 Cir., 79 F.2d 73; Baker v. Commissioner, 2 Cir., 80 F.2d 813; McGuire v. Commissioner, 7 Cir., 84 F.2d 431; Tate v. Commissioner, 8 Cir., 97 F.2d 658; Neptune Meter Co. v. Price, 2 Cir., 98 F.2d 76; Goldstein v. Commissioner, 7 Cir., 113 F.2d 363; Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937; Smith v. United States, 3 Cir., 121 F.2d 692; Rheinstrom v. Conner, 6 Cir., 125 F.2d 790; Alpers v. Commissioner, 2 Cir., 126 F.2d 58; Vesper Co. v. Commissioner, 8 Cir., 131 F.2d 200.

8 See § 115(i).
9 See § 115(a).
10 See § 115(g).
11 See § 115(c).
12 See § 115(i).
13 See § 115(g).

part of Pacific's stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of Pacific's stock; nor did the evidence require such a finding. The Board found that between 1922 and 1929 there was an increase of approximately $1,500,000 in Pacific's earned surplus; that its earned surplus at December 31, 1929, was $1,713,537.41; that it distributed a stock dividend of $1,050,000 (10,500 shares) on April 30, 1930; and that "The stock dividend * * * was for the purpose, as declared in the authorizing resolution * * * of adding such increased surplus to fixed capital. * * * Substantial dividends of from 8% to 15% were paid by Pacific * * * in all of the years from 1913 to 1935, inclusive. * * * There was no intention on the part of the directors and stockholders in 1935 to liquidate the corporation [Pacific], either in whole or in part, or materially to curtail its business activities. The purpose of the reduction in capital was to distribute to the stockholders a portion of the accumulated earnings which were not required in the conduct of the business. * * * Over a long period of years the company's [Pacific's] earnings were greatly in excess of the dividends paid. * * * [There] would appear to be no sound business reason for the payment of the stock dividend. By 1935 the company found that it had no need for the money which had been capitalized through the issuance of the stock dividend. The action taken in 1935 was in a very real sense the reversal of the action taken in 1930."

■ These findings are supported by substantial evidence and hence are conclusive.[14] Upon the facts found, the Board rightly concluded that the distribution by Pacific was not a distribution in partial liquidation of Pacific, but was a taxable dividend.[15]

The resolution of August 22, 1935, under which the distribution in question was made, did not provide for cancellation or redemption of Pacific's stock or any part or portion thereof.[16] It said nothing about cancellation or redemption. It merely provided for reduction of the par value of the stock from $100 to $70 a share and for distribution of $30 a share—a distribution which admittedly was made out of earnings and profits accumulated after February 28, 1913.[17] Nothing else occurred. Hence, as in the case of Inter-Island, there was no cancellation or redemption, or there was a cancellation or redemption at such time and in such manner as to make the distribution and cancellation or redemption essentially equivalent to the distribution of a taxable dividend.[18]

It is immaterial that some of petitioners' shares of Pacific stock were acquired as stock dividends, and that some were later acquired by purchase; for, regardless of the time or manner of their acquisition, all the shares were entitled to be, and all were, treated alike in the 1935 distribution. As to all the shares, therefore, that distribution was a taxable dividend.

■ Third. On November 3, 1930, Gaylord P. Wilcox transferred property to a trustee, in trust, by an instrument which directed the trustee to pay the net income of the trust, "or such part thereof as he [the grantor] may require," to the grantor (Gaylord P. Wilcox) during his lifetime. In 1934 and 1935 the trust held 2,500 shares of Inter-Island stock and 500 shares of Pacific stock. Income of the trust in 1934 and 1935 included $5,000 received from Inter-Island in the 1934 distribution and $15,000 received from Pacific in the 1935 distribution. These sums were included by the Board in computing the net income of Gaylord P. Wilcox. The inclusion was proper. Revenue Act of 1934, § 167(a) (2), 26 U.S.C.A. Int.Rev.Acts, page 727.

Decisions affirmed.

---

[14] See cases cited in footnote 6.
[15] See cases cited in footnote 7.
[16] See § 115(i).

[17] See § 115(a).
[18] See § 115(g).