LONG v. COMMISSIONER OF INTERNAL REVENUE.

No. 10111.

Circuit Court of Appeals, Sixth Circuit.

May 20, 1946.

Harold J. Siebenthaler, of Cincinnati, Ohio (Henry C. Frost, Harold J. Siebenthaler, and William R. Seaman, all of Cincinnati, Ohio, on the brief; Frost & Jacobs, of Cincinnati, Ohio, of counsel), for petitioner.

Lee A. Jackson, of Washington, D. C. (Sewall Key, Helen R. Carloss, and Mor-

ton K. Rothschild, all of Washington, D.C., on the brief), for respondent.

Before HICKS, SIMONS and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The petitioner, A. J. Long, Jr., seeks a review, pursuant to the provisions of §§ 1141, 1142 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, §§ 1141, 1142, of the decision of the Tax Court of the United States holding that there was a deficiency in his income tax for the calendar year 1939 in the amount of $43,057.05. The question involved is whether a distribution of $9 per share which was paid by The A. Nash Company on its common stock in December 1939 was a dividend payment out of earnings and so taxable, or in part a nontaxable return of capital.

The A. Nash Company was incorporated in 1916 with an authorized capital of $60,-000, divided into 400 shares of common stock and 200 shares of convertible preferred, both of the par value of $100 per share. The Company engaged in the business of tailoring and selling men's made-to-measure suits and top coats. Shortly thereafter the preferred stock was converted into common stock. Thereafter, from time to time until March 20, 1924, the authorized capital was increased to $3,000,-000 divided into 30,000 shares of common stock of the par value of $100 each. No further change was made in the authorized capital of the Company until December 31, 1932.

During the period of January 1, 1921 through June 30, 1924, the Company declared and paid non-taxable stock dividends (common on common) in the total amount of 16,875 shares of the par value of $100 per share. No stock dividends have been paid since June 30, 1924. These stock dividends were declared and paid for legitimate business purposes.

From the time of its organization until December 1932, the Company sold for cash at par (or delivered to employees as compensation) 8,840 shares of the par value of $100 per share. The remaining 16,875 shares of its then total issued shares of 25,-715 had been issued as stock dividends. Of the 25,715 shares outstanding, 2,298 were then held in the Company's treasury. Immediately prior to December 31, 1932, the Company's capital account, as shown by its balance sheet, disclosed a "deficit" of $647,-114.94. As of December 31, 1932, by appropriate corporate action and amendment to its charter, the par value of the common stock was reduced from $100 to $25 per share. This reduction was reflected on the Company's books by "writing down" its capital stock account from $2,571,500 to $642,875. By appropriate corporate action the 2,298 shares held in the treasury were retired, further reducing the capital stock from $642,875 to $585,425. As a result of these reductions, the deficit in the capital account was absorbed, a capital surplus account in the amount of $928,113.06 was created, and a surplus of $218,000 was appropriated to meet probable losses. Thereafter the item of surplus appropriated to meet probable losses was reduced from time to time and eventually eliminated; the item of capital surplus was increased by reason of minor adjustments; and all operating profits earned subsequent to December 31, 1932 were carried in an earned surplus account. On December 31, 1938, the Company's capital account as shown on its balance sheet was as follows:

Capital stock, $25 par value issued and outstanding, 23,417 $585,425.00
Capital Surplus .............. 945,639.29
Earned Surplus .............. 9,463.95

Cash dividends in the total amount of $21,428.00 were paid during the years of 1917 to 1920. During the years 1920 to 1930 inclusive, 1935, 1936 and 1937, the net earnings amounted to $4,491,279.04. The aggregate net losses in the years 1931 to 1934 inclusive, and 1938, amounted to $1,-295,213.06. Of the aggregate excess net earnings of $3,196,066.03 for the period 1920 to 1938 inclusive, cash dividends of $1,785,769.19 were paid. Thus the Company's undistributed net earnings during that period amounted to $1,410,296.84.

At a meeting of the Board of Directors held on December 20, 1939, resolutions were adopted authorizing a distribution of $9.00

per share, on all of the outstanding stock, payable December 28, 1939 to shareholders of record on December 26, 1939. The resolution provided that all of the earned surplus of the Company as shown on its books at the close of business on December 30, 1939 be appropriated and set aside for the payment thereof, and that the amount in excess of all earned surplus necessary to pay said dividend be charged against and paid out of the capital surplus of the Company. On December 28, 1939, letters were mailed to stockholders inclosing checks at the rate of $9 per share, and advising that said dividend was paid in part out of "Capital Surplus" after first using all of the "Earned Surplus" shown on the books as of December 30, 1939. On February 5, 1940, the shareholders were notified that $0.4489 per share of this distribution was paid out of earned surplus and that $8.5511 per share was paid out of capital surplus. After this distribution, the balance sheet of the Company as of December 30, 1939 showed no earned surplus and a capital surplus reduced to $745,398.51.

The petitioner first became associated with The A. Nash Company in the early part of 1931. On June 15, 1931, he acquired by gift one share of the common stock of the Company, in order to qualify as an officer of the Company. Between that date and July 19, 1939 he acquired by purchase 12,120 additional shares at an aggregate cost of $206,845. In the distribution above referred to the petitioner received the sum of $109,089. In his 1939 income tax return he reported the sum of $5,445.12 as a taxable dividend representing the distribution of $0.4489 per share. The remainder amount of $103,647.88 was treated as a return of capital. The Commissioner determined that the entire distribution of $9.00 per share was taxable as an ordinary dividend, in that to the extent that it was not paid out of earnings or profits of the taxable year, it was paid out of earnings or profits accumulated after February 20, 1913. The Tax Court sustained the Commissioner.

The question is controlled by §§ 115(a) and 115(b) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 115(a, b), which define taxable dividend distributions by corporations.[1] It is apparent from the foregoing facts that the $9 distribution was made by the corporation out of its earnings or profits accumulated after February 28, 1913, although $8.5511 of each $9 was paid out of such earnings and profits which had been capitalized prior to July 1, 1925 by nontaxable stock dividends, and in turn placed in a capital surplus account by a reduction in the par value of the stock from $100 to $25. This presents the question whether such a capitalization of earnings and profits removes them from the purview of §§ 115(a) and (b), by changing them from earnings into capital. § 115(h) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 115(h), provides that the distribution to a distributee by a corporation of its stock "shall not be considered a distribution of earnings or profits * * * if the distribution was not subject to tax in the hands of such distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment to the Constitution." Under the ruling in Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, a stock dividend (common on common) is accordingly not a distribution of earnings. Chapman Price Steel Company v. Commissioner, 7 Cir., 146 F.2d 189, certiorari denied, 325 U.S. 876, 65 S.Ct. 1557, 89 L.Ed. 1993. Such earnings are available for future distribution as dividends. Walker v. Hopkins, Collector, 5 Cir., 12 F.2d 262, certiorari denied 271 U.S. 687, 46 S.Ct. 638, 70 L.Ed. 1152; Wilcox v. Commissioner, 9 Cir., 137 F.2d 136; Beretta v. Commissioner, 5 Cir., 141 F.2d 452. See Commissioner v. Estate

[1] "Section 115(a)—Definition of dividend. The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year * * * without regard to the amount of the earnings and profits at the time the distribution was made."

"Section 115(b)—Source of distributions. For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *"

850

of Bedford, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611. The rulings of the Second Circuit in Commissioner v. Quackenbos, 78 F.2d 156, Patty v. Helvering, 98 F.2d 717, and Bedford's Estate v. Commissioner, 144 F.2d 272, indicating a contrary view have been recently overruled by the decision in Kirschenbaum v. Commissioner, 2 Cir., 155 F.2d 23, and by the reversal of Bedford's Estate v. Commissioner by the Supreme Court in Commissioner v. Estate of Bedford, supra.

██ Petitioner contends that a proper construction of § 115(h) of the Internal Revenue Code makes the distribution a nontaxable return of capital to him, even though it would not be such to an original recipient of the stock dividend. He is a purchaser of the stock from an original recipient of the stock dividend. He points out that the statute specifically refers to a distributee, which logically means that it is not applicable to a *purchaser* from a distributee, and that a ruling making it applicable to such a purchaser, particularly one without notice of the prior stock dividend, in effect imposes on the stock in the hands of such a purchaser an undisclosed lien by taxing the distribution as a dividend instead of treating it as a return of invested capital. The resulting hardship and unfairness is pointed out in Commissioner v. Cordingley, 1 Cir., 78 F.2d 118 and Parker v. United States, 7 Cir., 88 F.2d 907, upon which cases petitioner strongly relies. However, the legislative history of § 115(h) shows that it was not intended to make any change in the existing rule but was passed in the interest of greater clarity. S. Rep. No. 2156, 74th Cong. 2nd Sess., p. 19. If such a distinction was intended by its enactment, it would have no doubt been expressly so stated and not left to uncertain deduction. The distinction, although made by the Court in Parker v. United States, supra, was at the same time described by the Court as "somewhat paradoxical." Both cases relied upon by petitioner involved § 115(g) Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 115(g), dealing with redemption of stock, rather than §§ 115(a), (b) and (h) involved in this case. We find nothing in the wording of the sections here involved which makes such a distinction or permits one to be made by the Court, however desirable it might be. The wording on this point is plain and unambiguous. If a distribution of capitalized earnings is for tax purposes a distribution of earnings, it would seem to be a distribution of earnings regardless of who receives it. See Wilcox v. Commissioner, supra, 9 Cir., 137 F.2d 136, at pages 139 and 140. We agree with the Tax Court that whether or not the petitioner had knowledge of the prior stock dividends is immaterial. If the distinction contended for by the petitioner is to be made, it is for Congress to make it and not for the Court.

The judgment of the Tax Court is affirmed.