ZENZ v. QUINLIVAN.

Civ. No. 6572.

United States District Court
N. D. Ohio, W. D.
June 27, 1952.

58

Spengler, Nathanson, Hebenstreit & Heyman, Bert P. Hebenstreit, Joseph S. Heyman, Toledo, Ohio, for plaintiff.

John J. Kane, Jr., U. S. Atty., Cleveland, Ohio, Gerald P. Openlander, Asst. U. S. Atty., Toledo, Ohio, Ellis N. Slack, Acting Asst. Atty. Gen., Andrew D. Sharpe, Walter H. Beaman, Jr., Sp. Assts. to Atty. Gen., for defendant.

KLOEB, District Judge.

Plaintiff seeks a refund in the amount of $13,388.02 with interest, on income taxes assessed and paid for the year 1949.

Carl Zenz & Associates Company is an Ohio corporation with its principal place of business in Toledo, Ohio. It has an authorized capital of 200 shares of common stock, of which 108 shares have been issued.

Carl E. Zenz, who died testate on August 5, 1946, was the motivating spirit behind the corporation from the time of its organization in the year 1940. He was the husband of the plaintiff. On August 5, 1946, he owned 99 shares of the issued stock and plaintiff owned 9 shares. Under the will of her husband she received his 99 shares and, at the settlement of the estate of her husband, the fair market value of these outstanding shares was estimated at $400 per share for Federal estate tax purposes.

Plaintiff continued to operate the corporation after the death of her husband until she married Virgil F. Holmes, who was an employee of the corporation during the lifetime of her husband, and after the marriage Virgil Holmes became its president. Plaintiff served as treasurer and her attorney served as secretary. These three persons comprised the Board of Directors. Prior to March 12, 1949, plaintiff and Virgil F. Holmes were divorced and she assumed the name under which this action is brought.

After the divorce, plaintiff felt that it was inadvisable for her to continue operating the corporation which was engaged in general contracting, and particularly in excavating, and she entertained an offer from Mr. Archie Koder, who was a former employee of the corporation, and from his partner C. J. Jackson, both of whom were operating a separate contracting company known as the Koder Construction & Supply Company. It appeared to be the desire of Messrs. Koder and Jackson to obtain complete ownership and control of the Zenz Corporation in the interest of eliminating competition and appropriating good will. It was, of course, desirable upon the part of the plaintiff to sever her connections entirely with the corporation. The Zenz Corporation was possessed of a large earned surplus and profits, and the purchasers apparently did not desire to assume the ownership of these assets because of the tax liabilities that would accompany them.

It was decided that the purchasers would buy 47 shares for the sum of $37,130, payable $5,000 in cash and the balance in notes to be secured by the 47 shares of stock. This agreement is evidenced by Plaintiff's Exhibit No. 1, which bears the date of March 12, 1949, and is between the plaintiff as the seller and Archie Koder and C. J. Jackson as the buyers.

On the same date, March 12, the three members of the Board of Directors of the Zenz Corporation resigned and Archie Koder, C. J. Jackson and their attorney, Chester R. Early, were elected to the new board, with Koder serving as president, Jackson as secretary and treasurer, and Early as vice president.

On March 31, 1949, Plaintiff's Exhibit 4 was executed, it being an agreement between the plaintiff as the first party and Archie Koder and C. J. Jackson as the second party, and under the terms of this agreement it was provided that plaintiff should sell her remaining 61 shares to the Zenz Corporation, and at a special meeting of the Board of Directors of the corporation bearing the same date, March 31 (Plaintiff's Exhibit No. 5), a resolution was passed authorizing the purchase of the 61 shares for the sum of $790 per share, which totals $48,190. The resolution finds that the earned surplus of the corporation on that date amounted to $48,629.50. It is thus apparent that the 61 shares of stock were to be purchased for a sum corresponding to the earned surplus of the corporation. The earned surplus consisted of $36,028.02 in

cash, two passenger automobiles, two trucks, certain accounts receivable, and all United States Government bonds amounting to $1,606.50.

During the years of operation of the Carl Zenz & Associates Company under the direction of Carl Zenz and plaintiff, and comprising the years 1941 to 1948, both inclusive, the total dividends paid by the company amounted to $14,283. During six years of this time, Carl Zenz drew a salary of $18,000 per year, and during the last two years of this period, plaintiff received a salary of $12,000 per year.

On her income tax return for the year 1949, plaintiff reported the gain received from the sale and redemption of the 108 shares, 61 of which were thereafter carried on the books of the company as treasury shares, as gain from the sale or exchange of a capital asset. The Commissioner of Internal Revenue treated the transaction as being essentially equivalent to the distribution of a taxable dividend. Out of this difference of opinion arises this action.

This case was tried on March 20, 1952, and thereafter exhaustive briefs were filed by counsel on both sides. In addition, the Court has had the benefit of a transcript of the record of trial and an opportunity to study the exhibits.

It is the contention of the plaintiff that this case is governed by Reg. 111, Sec. 29. 115–9, which reads as follows:

"Reg. 111, Sec. 29.115–9. Distribution In Redemption Or Cancellation Of Stock Taxable As A Dividend.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

"The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or redemption by a corporation of a portion of its stock pro rata among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits accumulated after February 28, 1913. On the other hand, a cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend. A bona fide distribution in complete cancellation or redemption of all of the stock of a corporation, or one of a series of bona fide distributions in complete cancellation or redemption of all of the stock of a corporation, is not essentially equivalent to the distribution of a taxable dividend. If a distribution is made pursuant to a corporate resolution reciting that the distribution is made in liquidation of the corporation, and the corporation is completely liquidated and dissolved within one year after the distribution, the distribution will not be considered essentially equivalent to the distribution of a taxable dividend; in all other cases the facts and circumstances should be reported to the Commissioner for his determination whether the distribution, or any part thereof, is essentially equivalent to the distribution of a taxable dividend."

Plaintiff relies particularly on that portion of the Regulation, which reads as follows:

"On the other hand, a cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend."

It is the further contention of plaintiff that the net effect of the transaction involved was to extinguish the status of the

plaintiff as a shareholder by means of a partial liquidation under I.R.C. § 115(c), 26 U.S.C.A. § 115(c), which reads as follows:

"(c) Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. If any distribution in partial liquidation or in complete liquidation (including any one of a series of distributions made by the corporation in complete cancellation or redemption of all its stock) is made by a foreign corporation which with respect to any taxable year beginning on or before, and ending after, August 26, 1937, was a foreign personal holding company, and with respect to which a United States group (as defined in section 331 (a) (2)) existed after August 26, 1937, and before January 1, 1938, then, despite the foregoing provisions of this subsection, the gain recognized resulting from such distribution shall be considered as a gain from the sale or exchange of a capital asset held for not more than 6 months."

It is the position of the defendant that the transaction falls squarely under the provisions of I.R.C., § 115(g), which reads as follows:

"(g) Redemption of stock. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."

It is the position of the defendant that the "net effect" of the transaction was to withdraw the corporate earned surplus and pay it over to the plaintiff.

The Court bears in mind that the ruling of the Commissioner has the support of a presumption of correctness and the burden of proving it to be wrong rests upon the plaintiff. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Hirsch v. Commissioner of Internal Revenue, 124 F.2d 24, at page 28.

The Court is of the opinion that Sec. 115 (c) is not here applicable because certainly there has been no complete liquidation of the corporation and there has been no partial liquidation.

There has been no substantial proof that the transaction resulted in an extinguishment of a part of the Zenz Corporation or a contraction of its operations or a shrinkage of its business and no evidence whatever of a reduction in its capital. In other words, there is no proof of a contraction of the operations of the corporation. The Court therefore concludes that partial liquidation as specified in Sec. 115(c) is not involved. In this connection, the cases of Harter Bank & Trust Co. v. Gentsch, D.C., 60 F.Supp. 400, which is a decision by Judge Freed of the Eastern Division of the Northern District of Ohio, and Rheinstrom v. Conner, 125 F.2d 790, which is a decision of the Sixth Circuit Court of Appeals rendered in the year 1942, are worthy of consideration.

Plaintiff has relied particularly upon Commissioner v. Cordingley, 78 F.2d 118, which is a decision of the First Circuit Court of Appeals, and Commissioner v. Quackenbos, 78 F.2d 156, which is a decision of the Second Circuit Court of Appeals.

The Court finds that these cases have been overruled in Kirschenbaum v. Commissioner, 155 F.2d 23, 170 A.L.R. 1389, which is a Second Circuit Court of Appeals decision, and certiorari was denied by the Supreme Court in 329 U.S. 726, 67 S.Ct. 75, 91 L.Ed. 628. The opinion in the Kirschenbaum case cites and follows Commissioner v. Estate of Bedford, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611.

In contrast with the Cordingley and Quackenbos cases of the First and Second Circuit Courts of Appeals, the Seventh Circuit, in the case of McGuire v. Commissioner, 84 F.2d 431, announced a rule which rejects the "bad faith" test laid down by the First and Second Circuits and later overruled in the Second Circuit by the Kirschenbaum case, and this decision in the Seventh Circuit has been supported in the case of Hyman v. Helvering, 63 App.D.C. 221, 71 F.2d 342, certiorari denied 293 U.S. 570, 55 S.Ct. 100, 79 L.Ed. 669, and in the case of Flanagan v. Helvering, 73 App.D.C. 46; 116 F.2d 937, and Hirsch v. Commissioner, 9 Cir., 124 F.2d 24. In these latter cases the "net effect" theory is propounded and accepted and the authority of Sec. 115(g) is recognized. In Long v. Commissioner, 155 F.2d 847, at page 850, 167 A.L.R. 550, the Sixth Circuit, in an opinion by Miller, J., recognizes the overruling of the Quackenbos case by the Kirschenbaum and Bedford Estate cases.

From the facts in this case, supported by the testimony of C. J. Jackson and the plaintiff Fern R. Zenz, the Court concludes that the whole transaction beginning prior to March 12, 1949, and ending on March 31, 1949, has the definite appearance of a single operation. The witnesses testified, in effect, that Mrs. Zenz desired to sell all of her stock and to cease all connections with the corporation, and that Koder and Jackson desired to purchase complete ownership and control of the corporation and would be content with nothing less; that the mechanics of implementing the desires of the two parties were left entirely in the hands of the attorney for Koder and Jackson and that they, the witnesses, were not interested in how the operation was performed. They were interested only in the results.

It appears that a circuitous approach was then implemented which resulted in the end in plaintiff receiving the earned surplus of the corporation and in Koder and Jackson being relieved of the necessity of purchasing the earned surplus with its incumbent tax liabilities. Plaintiff's reliance on Reg. 111, Sec. 29.115–9 is therefore without merit.

 The Court believes that Sec. 115(g) is applicable. The redemption of this stock by the corporation occurred "at such time and in such manner as to make the * * redemption * *. * essentially equivalent to the distribution of a taxable dividend," and the distribution should, therefore, be treated as a taxable dividend. It appearing that the intent of the repurchase of the sixty-one shares by the corporation was merely retirement of these shares and nothing else, the fact that they are designated "Treasury shares" does not effect the control of Sec. 115(g).

The complaint is therefore dismissed at plaintiff's costs.

Findings of Fact and Conclusions of Law may be drawn by the defendant in accordance with this opinion and filed within fifteen (15) days. The plaintiff may file exceptions or suggested additions thereto within ten (10) days thereafter.