## GOLDSTEIN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7182.

Circuit Court of Appeals, Seventh Circuit.

June 10, 1940.

Maurice Weinstein, of Milwaukee, Wis., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and L. H. Post, Sp. Assts. to Atty. Gen., and J. P. Wenchel and Chas. E. Lowery, Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

EVANS, Circuit Judge.

Upon facts which were either stipulated, or established beyond dispute, the Board of Tax Appeals found:

The Rhea Manufacturing Company was organized in Wisconsin in 1919. In 1932 and 1933, the stock was held by three members of the Goldstein family—petitioner, his brother, and his mother being the officers and the sole stockholders.

In 1919, the common stock of this company was 150 shares, par value, $100, all outstanding. This was raised to 250 shares in 1920. In 1921, it was increased to $50,000, and 14 new shares issued. In January, 1922, a stock dividend of 50% was declared. The outstanding stock was $39,600; increased in 1923 by 15 shares to $41,100.

On September 20, 1932, the Company issued 411 shares of preferred stock, $100 par value, in exchange for 411 shares of common stock. On October 1, 1932, no common stock was outstanding. Shortly thereafter, 411 shares of common stock were sold to the preferred stockholders at $1 per share. At the end of 1932, 1933, and 1934, the total outstanding common stock was 411 shares.

From '22 to '33 the Company's authorized shares of preferred stock were 500, par value $100 per share, of which 471 were outstanding at the end of 1923. In 1926, 1927, 1929, and 1931, preferred stock was gradually redeemed so that at the end of 1931, none was outstanding.

On September 30, 1932, 411 shares of preferred stock were issued in exchange

for 411 shares of common stock. In 1933, the Company redeemed all the oustanding preferred stock, 411 shares. In 1934, 249 shares of preferred stock were issued and outstanding.

The net earnings and cash dividends paid in four years were as follows:

| Year | Net Earnings | Cash Dividends | Stock Dividends | Surplus |
|---|---|---|---|---|
| 1930 | $ 48,601.31 | $900.00 | | $ 73,947.61 |
| 1931 | 64,004.08 | 0 | | 129,878.77 |
| 1932 | 54,626.26 | 0 | | 158,417.61 |
| 1933 | 134,330.04 | 0 | | 264,123.64 |

On August 29, 1932, the corporation amended its articles 'for the advantage of the stockholders.' The authorized capital stock was to be 500 shares of preferred stock at $100 par value, and 500 shares of common stock at $1 par value. Petitioner, his brother, and mother, the sole stockholders in September, 1932, surrendered their common stock and received a like number of shares of preferred stock and each purchased the same number of shares of common stock for $1 per share. Each of the three members of the family held 137 shares of preferred stock and 137 shares of common stock, save only, that the mother held one share less than her sons.

In April, 1933, the stockholders passed a resolution authorizing the redemption of the outstanding preferred stock of the par value of $41,000. Petitioner, his brother, and mother received $41,000 (the tax on which is here involved) for their preferred stock which they surrendered. Shortly after the retirement of this stock, the Company again issued 249 shares of preferred stock.

There was no evidence to show need of increase or decrease in capital. No cash dividends were paid in 1931, 1932, and 1933. The undivided surplus in 1933 was $264,123.64. The nature of the company's business was the manufacture and sale of dresses. Three stockholders held the stock of this Company in 1933 and cash dividends on the common stock could have been declared and paid.

The Board found that the redemption in 1933 of the Company's preferred stock of $41,000 was made at such time and in such manner as to be essentially equivalent to the distribution of a taxable dividend.

In our opinion the facts briefly stated above amply justify this finding (or mixed finding and conclusion). We fail to appreciate the reasons asserted by petitioner and his co-stockholders for the retirement of the preferred stock. The reason given in the resolution "the general welfare of the Company and for the advantage of the stockholders to receive dividends" also invites distrust rather than assurances. The assertion of a false or deceptive reason is suggestive of ulterior motives. Why could there not have been a dividend paid on the common stock? There were but three stockholders who owned all the common and preferred stock. The three were in one family—a mother and two sons. There was on hand undistributed surplus five times as large as the par value of the stock. The earnings for the year 1933 were more than three times the amount distributed through the retirement of the preferred stock. The issue of the preferred stock, its early retirement, and then shortly thereafter its reissue, are unexplained.

Citations of authorities are hardly necessary and of little value because the facts peculiar to each case must determine the outcome. However, see Hyman v. Helvering, 63 App.D.C. 221, 71 F.2d 342; Patty v. Helvering, 2 Cir., 98 F.2d 717.

The order of the Board of Tax Appeals is affirmed.