In re ESTATE of Irwin G. LUKENS,
Deceased.

George E. LUKENS, Edwin J. Brooks and
The Philadelphia National Bank, Executors, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 12094.

United States Court of Appeals
Third Circuit.

Argued March 8, 1957.

Decided June 11, 1957.

Charles S. Jacobs, Philadelphia, Pa. (Charles I. Thompson, Jr., Philadelphia, Pa., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., on the brief), for petitioners.

C. Guy Tadlock, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Harry Baum, Attorney, Department of Justice, Washington, D. C., on the brief), for respondent.

.Before GOODRICH and HASTIE, Circuit Judges, and McILVAINE, District Judge.

HASTIE, Circuit Judge.

This appeal by a taxpayer from a decision of the Tax Court, Irwin G. Lukens, 1956, 26 T.C. 900, challenges that court's conclusion that an amount paid by a corporation to a stockholder for the redemption of certain stock was essentially equivalent to and, under Section 115(g) of the Internal Revenue Code of 1939, 53 Stat. 48,[1] should be treated as a distribution of a taxable dividend to the stockholder.

The present problem has arisen in this way. A corporation, Florex Gardens, was organized in 1907 to engage in the business of growing and marketing flowers. Its entire capital stock, duly issued and fully paid for, consisted of 2000 shares of par value of $50 each. The taxpayer, Irwin Lukens, one of the several investors in the venture bought his stock at par and for cash. Later, the enterprise became a family corporation with taxpayer, his son George and his daughter Clara the sole stockholders.

Beginning in 1922 and thereafter, the son George devoted full time to Florex. He was in active charge of its management from about 1930. Taxpayer's principal occupation was banking, he being the president of a bank and a principal officer of a building and loan association. During the middle 1940's taxpayer, then more than 75 years old, was not active in the management or supervision of Florex. He visited the business premises only about five times annually. However, he was both president and a director of the corporation. George and Clara were the other directors. George often sought the advice of his father and at times deferred to him on important policy questions. This situation continued until 1950 when the taxpayer entirely severed his connection with the business.

The Tax Court also found that from 1946 to 1950 the taxpayer followed a course of action intended to culminate, as in fact it did, in his total withdrawal from the business and the giving of his remaining interest in the corporation to his son and daughter. The significant acts in the accomplishment of this design, as listed by the Tax Court, were gifts of stock to Clara and George in 1946, the redemption of stock in 1948 out of which the present controversy

---

1. § 115. Distribution by corporations.

\*   \*   \*   \*   \*

"(g) Redemption of Stock. \* \* \* If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent

to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend." 26 U.S.C. § 115 (g).

has grown, and final gifts of his remaining holdings in 1950.

At the time of the questioned redemption, the taxpayer owned 547 shares, George owned 526 and Clara owned 427, in all 1500 shares. The remaining 500 shares of the original issue had been redeemed and retired years earlier. The taxpayer's 547 shares were part of his original holding which he had bought for cash at par.

Over the years taxpayer had from time to time borrowed money from the corporation and repaid such loans. He also had loaned money to the corporation from time to time. As a result of these transactions he owed the corporation $30,000 in 1948.

In these circumstances and at the taxpayer's suggestion, it was agreed by the directors in 1948, taxpayer not voting, that the corporation would redeem 446 shares of taxpayer's stock at par and apply the proceeds, $22,300 against his indebtedness to it. The book value of the stock exceeded $50 per share at this time, although testimony was to the effect that the directors regarded $50 per share as a fair price. In this connection, although the operations of the corporation had been profitable in earlier years so that a surplus had been accumulated, it was losing money during 1948 and continued to do so for several years thereafter.

Finally, taxpayer's gift of his remaining stock to his son and daughter in 1950 was accompanied by his resignation as president and director and complete termination of his legal interest in the corporation and actual participation in its affairs.

On these facts the Tax Court ruled that the $22,300 realized by taxpayer on the 1948 stock redemption was taxable to him as a dividend distribution under Section 115(g).

█ This court has recently pointed out that in these Section 115(g) cases a reviewing court's function is twofold: to judge whether "the determination was made upon the application of correct criteria", and then to ascertain whether the evidence, evaluated in its proper legal frame of reference, is appropriate and adequate to support the determination. Ferro v. Commissioner of Internal Revenue, 3 Cir., 1957, 242 F.2d 838, 840.

██ In generality, the controlling criteria and legal conceptions are not troublesome. Characteristically, a dividend is a proportionate distribution to stockholders out of earnings and profits which leaves legal ownership and control of a corporation unchanged, while a bona fide and normal redemption of stock eliminates the interest represented by that stock with a proportionate increase of the ownership rights represented by the stock which remains outstanding. In rational conception, a stock redemption can properly be treated as "essentially equivalent" to a dividend distribution only if it exhibits or is attended by significant consequences which cause it, in net effect, to resemble a dividend distribution. See e.g. Ferro v. Commissioner, 3 Cir., 1957, 242 F.2d 838; Boyle v. Commissioner, 3 Cir., 1951, 187 F.2d 557, certiorari denied 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618; Smith v. United States, 3 Cir., 1941, 121 F.2d 692; Flanagan v. Helvering, 1940, 73 App.D.C. 46, 116 F.2d 937, 939–940; Hirsch v. Commissioner, 9 Cir., 1941, 124 F.2d 24; Smith v. United States, 1955, 130 F.Supp. 586, 591, 131 Ct.Cl. 748; cf. Commissioner of Internal Revenue v. Estate of Bedford, 1945, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611; Earle v. Woodlaw, 9 Cir., 1957, 245 F.2d 119, certiorari denied, 354 U.S. 942, 77 S.Ct. 1400. Conversely, if the net effect of what is done is no different from a routine sale of corporate stock, the dividend analogy must fail and Section 115(g) cannot apply. Indeed, if no more or less has been accomplished than results from the normal outright repurchase of capital stock, factors which may be significant in doubtful situations exhibiting ambiguous actions, cannot reasonably be used to justify an artificial analogy to dividend distribution.

■ Perhaps the clearest example of this is a redemption of stock constituting an individual's entire holding which leaves him with no ownership rights whatever in the corporation. In other situations the fact that earnings are used to pay for a stock redemption,[2] or that the corporation is a family business, or that the individual rather than the corporation initially sought the redemption,[3] or any of several other circumstances[4] may help resolve doubt about the net effect of the transaction. But where the fundamental fact appears that the stockholder is surrendering his entire interest, it is a contradiction of terms to characterize the transaction as a dividend, which presupposes persisting ownership rights. "Section 115(g) applies to one who has received a distribution on a stock interest which he continues to own. If he surrenders all his stock, the amount received is for the stock interest surrendered." See Roehner and Roehner, Ratio Decidendi in Federal Tax Cases, 1953, 9 Tax.L.Rev. 75, 78.

It is well established that this is the law, at least if the questioned redemption itself completes the stockholder's divestiture of all corporate interest. Zenz v. Quinlivan, 6 Cir., 1954, 213 F.2d 914; Carter Tiffany, 1951, 16 T.C. 1443; U. S. Treas. Reg. 111, § 29.115-9. But at times a stock redemption is in fact a step, but not the final step, in a course of planned disposition of a stockholder's entire holding. The Tax Court itself has very recently reasoned that where such a redemption greatly reduced the fractional interest of the taxpayer in the corporation and "represented a first step in an integrated plan to eliminate the * * * [taxpayer] as a stockholder", it was "plain that the distributions represented in substance as well as in form merely the purchase price for the shares, and not the payment of a taxable dividend." Jackson Howell, 1956, 26 T.C. 846.

■ On the Tax Court's own finding this is just such a case. Indeed, by the time the present tax question arose it was possible to look back upon the entire course of the taxpayer's withdrawal from the corporation and to observe that the transaction had been in no way different from what it purported to be. The stock had been purchased by the taxpayer for cash. It was redeemed for exactly the amount it originally cost him. The transaction resulted in a normal reduction of his ownership position and rights in the corporation. Taxpayer held 547 shares, or more than 35 per cent of the outstanding capital stock before these 446 shares were redeemed. He was left with 101 shares or less than a 7 per cent interest in the corporation. There were no other classes of stock and no other ownership devices to avoid this diminution of interest.[5] The transac-

2. See e. g. Goldstein v. Commissioner, 7 Cir., 1940, 113 F.2d 363; Allen v. Commissioner, 1 Cir., 1941, 117 F.2d 364; Hirsch v. Commissioner, 9 Cir., 1941, 124 F.2d 24.

3. See e. g. Ferro v. Commissioner, 3 Cir., 1957, 242 F.2d 838; Smith v. United States, 3 Cir., 1941, 121 F.2d 692; Flanagan v. Helvering, 1940, 73 App.D.C. 46, 116 F.2d 937.

4. See the factors listed in Earle v. Woodlaw, 9 Cir., 1957, 245 F.2d 119, certiorari denied 354 U.S. 942, 77 S.Ct. 1400; Flanagan v. Helvering, 1940, 73 App.D.C. 46, 116 F.2d 937, 939. Some of these factors have been criticized as logically irrelevant. See Nolan, The Uncertain Tax Treatment of Stock Redemptions: A Legislative Proposal, 65 Harv.L.Rev. 255

(1951). Some are stressed by the courts as both indicative of dividend equivalence and lack of dividend equivalence. Compare Estate of Henry Vernon Foster, 1944, 3 CCH Tax Ct.Mem. 249, with Goldstein v. Commissioner, 7 Cir., 1940, 113 F.2d 363 (availability of surplus); compare Joseph W. Imler, 1948, 11 T.C. 836 with Flanagan v. Helvering, 1940, 73 App.D.C. 46, 116 F.2d 937 (poor dividend record).

5. It has been said that the "touchstone" in applying § 115(g) "must be whether the distribution in acquisition of stock has caused a significant change in the position of the recipient to other shareholders or to the corporation". Nolan, op. cit. supra at 256; Ferro v. Commissioner, 3 Cir., 1957, 242 F.2d 838. Thus a pro rata redemption, absent a contraction, is,

tion was a significant step in a withdrawal, begun two years earlier and completed two years later.

We think it is impossible to doubt on this record that through the redemption the taxpayer was doing no more than recouping his original capital investment, giving up in return the ownership rights represented by the redeemed stock. Certainly Section 115(g) was never intended to test the 16th Amendment conception of "income" by placing such recoupment in the category of taxable income. See Note 29 N.Y.U.L.Rev. 489 (1954); Cf. Commissioner of Internal Revenue v. Snite, 7 Cir., 1949, 177 F.2d 819; Parker v. United States, 7 Cir., 1937, 88 F.2d 907; Stanley v. Waldheim, 1956, 25 T.C. 839.[6]

Apparently the Tax Court has been unwilling to adopt this analysis in the present case because the questioned stock redemption increased the proportionate ownership rights of taxpayer's son and daughter to the same extent that his rights were diminished. This circumstance has been coupled with the fact that the son continued from time to time to defer to his father after the stock redemption even as he did before. Of course, as stockholders, the son and daughter could outvote their father whenever they so chose, both before this redemption and after.

■ The difficultly with this argument is that in applying Section 115(g) of the 1939 Code, the stock of the several members of a family is not normally treated as a unit.[7] Unless other members of the family are in effect dummy stockholders, the increase in their interest which results from the redemption of their kinsman's stock does not destroy the normal significance of the proportionate reduction of his interest. See Estate of Searle, 1950, 9 CCH Tax Ct. Mem. 957; R. W. Creech, 1942, 46 B.T.A. 93; Commissioner of Internal Revenue v. Snite, 7 Cir., 1949, 177 F.2d 817; Estate of Henry Vernon Foster, 1944, 3 CCH Tax Ct. Mem. 249; Clara Louise Flinn, 1938, 37 B.T.A. 1085; William H. Grimditch, 1938, 37 B.T.A. 402 (wives dummy stockholders).

since it leaves ownership unchanged, viewed as equivalent to a dividend. See e. g. Samuel H. Kessner, 1956, 26 T.C. 1046; U.S.Treas.Reg. 111, § 29.115-9. Also the fact that the redemption is from a sole stockholder, or otherwise leaves ownership interests substantially the same, has been stressed by the courts. Ferro v. Commissioner, supra; Smith v. United States, 3 Cir., 1941, 121 F.2d 692; Commissioner of Internal Revenue v. Roberts, 4 Cir., 1953, 203 F.2d 304; Brown v. Commissioner, 3 Cir., 1935, 79 F.2d 73; Rheinstrom v. Conner, 6 Cir., 1942, 125 F.2d 790, certiorari denied 317 U.S. 654, 63 S.Ct. 49, 87 L.Ed. 526; Hirsch v. Commissioner, 9 Cir., 1941, 124 F.2d 24. On the other hand cases involving as substantial a change in ownership interests as that in the instant case have usually found § 115(g) inapplicable. See Smith v. United States, 1955, 130 F.Supp. 586, 131 Ct.Cl. 748; Jackson Howell, 1956, 26 T.C. 846; A. C. Monk, 1947, 6 CCH Tax Ct.Mem. 1015; cf. Jones v. Griffin, 10 Cir., 1954, 216 F.2d 885 (jury question).

6. In Marie W. F. Nugent—Head Trust, 1951, 17 T.C. 817, 823 the Tax Court pointed out that "[i]f such redemptions were held to constitute dividends as regards petitioners, herein, a peculiar basis question would arise. * * * the cost basis for such redeemed stock would be allocable to the remaining stock thus increasing the cost basis per share; and as the amount of stock approached zero, the basis of the stock per share would reach fantastically high values which could never be recovered." In the instant case if the above procedure were followed, taxpayer's basis after the redemption would be approximately $270. per share, far in excess of either book or fair market value. For a discussion of the basis problem see Katcher, The Case of the Forgotten Basis: An Admonition to Victims of Internal Revenue Code Section 115(g), 48 Mich.L.Rev. 465 (1950).

7. For discussion of changes, inapplicable to this case, made in the 1954 Code, see Cohen, Silverman, Surrey, Tarleau, and Warren, The Internal Revenue Code of 1954: Corporate Distributions, Organizations and Reorganizations, 68 Harv.L. Rev. 393, 396–401 (1955); Cohen, Redemptions of Stock Under the Internal Revenue Code of 1954, 103 U.Pa.L.Rev. 739 (1955); Mertens, Laws of Federal Income Taxation, 1956, § 9.105.

Nor is filial deference such as this record shows to be equated with the subservience of a dummy stockholder to the real party in interest. In this case it is not significant that ownership continued within the family after the stock redemption. The separate interests of the individual members of the family were in no sense sham or unreal. The progressive reduction of the father's interest is not deprived of normal significance by the proportionate increase of his children's holdings.

The decision of the Tax Court will be reversed.