UNITED STATES et al. v. LESOINE et al.
UNITED STATES v. MARCUS.

No. 13280.

United States Court of Appeals
Ninth Circuit.

March 23, 1953.

Ellis N. Slack, Acting Asst. Atty. Gen., A. F. Prescott, Howard P. Locke, and Walter Akerman, Jr., Sp. Assts. to Atty. Gen., Chauncey Tramutolo, U. S. Atty., and Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellants.

Peirce Coombes, San Francisco, Cal., for appellee.

Before STEPHENS, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

The question on these appeals is whether the taxpayers, John A. Lesoine and L. J. Marcus, are entitled to refund of income taxes paid by them for the years 1942–1943.

The material facts were stipulated. In 1942 each of the taxpayers owned one-half of the total authorized and outstanding stock of Marcus-Lesoine, Inc., a California corporation.

. Marcus-Lesoine, Inc. declared ordinary dividends of $40,000 on November 30, 1942, and $80,000 on December 28, 1942. The dividends were payable one-half to each of the taxpayers. The first was paid in cash. The second was credited to the loans re-

ceivable accounts of the taxpayers on the books of the corporation. In their income tax returns for the year 1942 the taxpayers reported these dividends as income.

On June 14, 1943, liquidation of Marcus-Lesoine, Inc. was commenced. In the course of liquidation proceedings it was determined that there had been an insufficient surplus for payment of the $40,000 dividend of November 30, 1942, and that there had been no surplus for payment of the $80,000 dividend of December 28, 1942.

The corporation recalled the dividends. The cash paid to the taxpayers was returned and the bookkeeping entries relative to the second dividend were cancelled.

The Bureau rejected amended returns for 1942 filed by the taxpayers in which they each reported dividends of only $7329.-40, this being the purported amount of surplus which existed for the payment of these dividends.

The taxpayers paid income tax on the full amount of the two 1942 dividends and each brought a timely suit for refund. The two cases were consolidated for trial. The court below held that the taxpayers were not entitled to refund of any part of the the taxes paid on the $40,000 dividend of November 30, 1942, but awarded them refunds of all taxes paid on the $80,000 dividend of December 28, 1942. The Collector and the United States have appealed from so much of the two judgments as awarded the taxpayers refunds of the taxes paid on the dividend of December 28, 1942.

Appellants' position, briefly, is that the crediting of the taxpayers' loan accounts with the amount of $80,000 constituted payment of a dividend, that the dividend was received by the taxpayers under a claim of right, and that the dividend was therefore taxable regardless of the alleged "rescission" in the following year.

Appellants are correct. The $80,000 which was credited against the taxpayers' debts to the corporation was plainly a dividend within the meaning of § 115(a) of the Internal Revenue Code, 26 U.S.C.A. § 115(a).[1] Though the corporation had no book surplus at that time, it nevertheless had "earnings or profits" for payment of dividends within the meaning of § 115(a). Between 1924 and 1929 the corporation had increased its capital stock from $10,000 to $250,000. During that period stock of a total par value of $127,800 was issued to the shareholders as stock dividends and charged to the corporation's surplus account. It is well settled that a corporation's earnings and profits available for payment of dividends under § 115(a) are not diminished by distribution of stock dividends. Treasury Regulations 111, § 29.115–11(5); Wilcox v. Commissioner, 9 Cir., 137 F.2d 136, 140; Beretta v. Commissioner, 5 Cir., 141 F.2d 452, 455–456, certiorari denied 323 U.S. 720, 65 S.Ct. 50, 89 L.Ed. 579; Long v. Commissioner, 6 Cir., 155 F.2d 847, 849, 167 A.L.R. 550; Sheehan v. Dana, 8 Cir., 163 F.2d 316, 318, 173 A.L.R. 684; cf. Commissioner v. Estate of Bedford, 325 U.S. 283, 290, 292, 65 S.Ct. 1157, 89 L.Ed. 1611. The earnings and profits of Marcus-Lesoine, Inc., which existed in the years 1924–1929 remained intact and available for distribution of the dividends in 1942.[2]

The crediting of the amount of the dividend against the taxpayers' debts to the corporation was the equivalent of actual payment to the shareholders and appropriation by them of the amount paid to the discharge of their debts. Herbert v. Commissioner, 3 Cir., 81 F.2d 912.

The argument of the taxpayers is that the declaration and payment of the dividend in the absence of a surplus violated California law, that the violation occurred because of a mistake of fact as to the existence of a surplus, and that rescission of the

---

1. "§ 115. Distributions by corporations
   "(a) **Definition of dividend.** The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits ac- cumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year * * *."

2. Under § 115(b) of the Internal Revenue Code every distribution is deemed to have been made out of earnings or profits to the extent thereof.

dividend voided it so as to render it non-taxable.

█ The argument is without merit. It is unnecessary to decide whether the taxpayers had the right to retain the dividend under state law or whether they might have been adjudged liable to return it if an action had been brought against them for that purpose.[3] It is plain that the taxpayers received and retained the dividend under a claim of right thereto during the taxable year 1942. The case falls within the familiar "claim of right" doctrine. The Supreme Court in North American Oil Consolidated v. Burnet, 286 U.S. 417, at page 424, 52 S.Ct. 613, at page 615, 76 L.Ed. 1197, stated the rule as follows:

> "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

The Supreme Court recently reaffirmed the rule, saying that the "claim of right" doctrine "is now deeply rooted in the federal tax system." United States v. Lewis, 340 U.S. 590, 592, 71 S.Ct. 522, 523, 95 L.Ed. 560, rehearing denied 341 U.S. 923, 71 S.Ct. 741, 95 L.Ed. 1356. Referring to the above-quoted rule laid down in the North American case, the Court said that "Nothing in this language permits an exception merely because a taxpayer is 'mistaken' as to the validity of his claim." Id., 340 U.S. at page 591, 71 S.Ct. at page 523.[4]

█ The rule is founded upon the necessity of giving finality to the annual accounting period and upon recognition of the impracticability of compelling the treasury to determine when a taxpayer's claim is without legal warrant. United States v. Lewis, supra, 340 U.S. at page 592, 71 S.Ct. at page 523; Rutkin v. United States, 343 U.S. 130, 137, 72 S.Ct. 571, 96 L.Ed. 833. Pecuniary gain received under a claim of right must be reported for the year in which it has been received. If the taxpayer is subsequently adjudged liable to return the funds, he is allowed a deduction for the year in which they are repaid. North American Oil v. Burnet, supra, 286 U.S. at page 424, 52 S.Ct. 613.

The taxpayers rely upon the case of Knight Newspapers v. Commissioner, 6 Cir., 143 F.2d 1007, 154 A.L.R. 1267. In that case dividends were declared by a subsidiary corporation in favor of the parent corporation and credited against the

3. The payment of the dividend here in question was proscribed by §§ 346 and 363 of Deering's Civil Code of California 1941, prohibiting payment of dividends except out of surplus or net profits earned during the latest accounting period. But it is very doubtful whether the taxpayers' right to retain the dividend was thereby impaired. Under § 364 of Deering's Civil Code 1941, shareholders receiving illegal dividends were liable for repayment only when (1) the shareholders at the time of receiving the dividends had knowledge of facts indicating their illegality, and (2) the corporation issuing the dividends was declared insolvent within one year after their payment. See Oilwell Chemical & Materials Co. v. Petroleum Sup. Co., 64 Cal.App.2d 367, 148 P.2d 720. Here it does not appear that the taxpayers at the time of receiving the dividend had notice of any facts casting doubt upon its legality. And the second condition precedent to their liability to return the dividend— the corporation's becoming insolvent within a year—did not in fact occur.

§§ 346, 363 and 364 of Deering's Civil Code of California were in effect during the period involved in this case but were superseded upon passage of the Corporation Code in 1947. See Stat.Cal.1947, pp. 2332, 2333 and Deering, Corporation Code Annotated, §§ 824–829, 1500, 1510 (1948).

4. The claim of right doctrine has been applied in a host of cases in the courts of appeal and lower courts, e.g., Commissioner v. Hartfield, 2 Cir., 194 F.2d 662; St. Regis Paper Co. v. Higgins, 2 Cir., 157 F.2d 884, certiorari denied 330 U.S. 843, 67 S.Ct. 1083, 91 L.Ed. 1288; Haberkorn v. United States, 6 Cir., 173 F.2d 587; Barnhardt v. United States, D.C.W.D.N.C., 98 F.Supp. 552. See also the comment on the doctrine, "Taxing Unsettled Income: The 'Claim of Right' Test," 58 Yale L.J. 955 (1949).

indebtedness of the parent to the subsidiary. The declaration of the dividends violated certain provisions of the subsidiary's preferred stock certificates under which the holders of its preferred stock had the right to void the dividends. When the mistake was discovered in the following year, the subsidiary rescinded the dividends. The court held that the parent received the dividends as constructive trustee and was therefore not taxable thereon. Emphasis was placed upon the fact that if the parent was held taxable upon the dividend it would have been subjected to a heavy personal holding company surtax on undistributed earnings which could not be recouped by taking a deduction upon repayment of the dividend in a later year. In a subsequent opinion by the same court the Knight case was limited strictly to its facts. See Haberkorn v. United States, 6 Cir., 173 F.2d 587, 590. The rule of the Knight case has met with disapproval. St. Regis Paper Co. v. Higgins, 2 Cir., 157 F.2d 884, 885, certiorari denied 330 U.S. 843, 67 S.Ct. 1083, 91 L.Ed. 1288.

■ At any rate, there are no circumstances in the case at bar that would justify our departure from the principles laid down by the Supreme Court in the North American and Lewis cases. The taxpayers, having received the 1942 dividend here in issue under a claim of right, were taxable thereon, regardless of the merits of their claim and the acts of the parties in the following year with reference to it.

■ The taxpayers argue that the "claim of right" doctrine should have no application to this case, since the years 1942 and 1943 were combined into one taxable period by the Current Tax Payment Act of 1943, 57 Stat. 126, 26 U.S.C.A.Int.Rev.Acts, page 385, and both payment and rescission of the dividend in question occurred within that period. There is some doubt whether the recall of the dividend and its repayment in 1943 constituted a true "rescission" of the dividend. In any event, the argument that the years 1942 and 1943 were combined into a single taxable period is frivolous. To give relief from double tax payments in 1943 during the transition from a scheme of annual tax payments to the pay-as-you-go tax plan, the Current Tax Payment Act, in § 6, 57 Stat. 145, contained a formula for forgiveness of all or a part of the taxes of either 1942 or 1943. Where, as in the case of the taxpayers here, a person's tax, computed on an annual basis and in the usual manner, was more than $50 for each of the years 1942 and 1943, the tax due under that Act consisted of the tax for *either* 1942 · or 1943, whichever was the larger, *plus* 25% of the tax for the remaining year. The statute by its terms required recognition of the annual accounting period in computing the tax for the two years.

■ The taxpayers lay much stress upon the fact that for all practical purposes they "were" the corporation in this case and that it was they who made the mistake in declaring the unlawful dividend in 1942. We have difficulty in understanding the pertinency of this argument. It is true that as directors of the corporation they could, under certain circumstances, have been held liable to creditors for negligently paying the dividend. Deering's Civil Code of California 1941, § 363. But the fact that they incurred a contingent liability as directors is not material to the question whether they were taxable upon dividends received by them as shareholders.

The judgments are reversed insofar as they award the taxpayers refunds of the income taxes paid by them upon the $80,000 dividend declared by Marcus-Lesoine, Inc., on December 28, 1942.