*Decisions will be entered under Rule 50.*

CARL W. AND RUTH LUNDEEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67409.   October 9, 1959.

*Gordon D. Simons, Esq.,* for the petitioners.
*Donald W. Wolf, Esq.,* for the respondent.

20

22

OPINION.

TURNER, *Judge:* The parties are agreed that if the payment by Transit of $400 per share to the holders of its common stock on December 28, 1946, pursuant to a resolution adopted by its directors on that date, constituted the payment of a taxable dividend, Transit in 1953 had no earnings from which a taxable dividend could have been distributed to the petitioners on their Transit preferred stock.

As supporting his determination that the $600 received by the petitioners in 1953 on their preferred stock was a taxable dividend, it is the contention of the respondent that the payment of $100,000 by Transit on December 28, 1946, to its common stockholders as a dividend, was in violation of the statutes of the State of Minnesota, and was "nullified" 2 days later through repayment by Motor Service, the owner of 94 per cent of Transit's common stock. It is the contention of the petitioners that the distribution to common stockholders on December 28, 1946, was not in violation of the Minnesota statutes, that it was a taxable dividend, which was so reported by the stockholders on their income tax returns, and that the contribution of $100,000 by Motor Service to Transit on December 30, 1946, as "capital surplus," was a real transaction and the distribution to the common stockholders 2 days prior thereto was not affected thereby.

The facts show that the business of Motor Service was that of owning, maintaining, servicing, and renting buses and trucks. The record does not show the date of its organization, but its primary, if

not sole, purpose appears to have been that of acquiring the buses and trucks of Transit and Ace Lines and renting them back to the former owners for use in their operations. Presumably, they were transferred for a stated price, since according to the testimony, the books of account show that the December 28, 1946, checks for $73,715.40 to Transit and $15,000 to Ace Lines were applied on the books in payment of or on notes shown as given in the purchase of used buses and trucks. It thus appears that to the extent of the amounts of the said checks, Motor Service was able to acquire the buses and trucks of Transit and Ace Lines without an actual outlay of cash other than that received the same day from Transit.

The facts also show that within 2 days of December 28, 1946, when the directors of Transit were spreading on the minutes of that company a statement that "[a] consideration of the financial affairs of the company disclosed that the company's position was such that it could and should declare dividends to its stockholders," and that thereupon the dividend of $400 per share, or a total of $100,000, on its common stock was voted, the directors of Motor Service were declaring on its minutes that a consideration of "the financial affairs" of Transit disclosed that by reason of the dividend by Transit to it, the financial condition of Transit was such that it must be improved, whereupon it was resolved that a contribution of $100,000 to the "capital surplus" of Transit be made.

It would thus appear that if the declaration in the minutes of Motor Service be accepted as true, it is not possible, similarly, to accept the declaration in Transit's minutes that a consideration of Transit's financial affairs disclosed its position to be such that it could and should declare a dividend of $100,000 on its common stock. We are satisfied that the declarations so appearing in the minutes of the two companies were worked out in conjunction; that the statement in Transit's minutes was actually a tongue-in-cheek statement designed as window dressing or a backdrop for the distribution of cash which Motor Service desired. In short, we agree with the respondent that there was manipulation at least in the sense of dexterous management or contrivance.

That is not to say, however, that the December 28, 1946, distribution by Transit to its common stockholders was not a taxable dividend, and was not effective in eliminating all of the earnings and profits available to it for distribution as such. It is settled law, we think, that in the absence of a declared or plainly indicated purpose or intent that State law is to be taken into account, as was the case in *United States v. Ogilvie Hardware Co.*, 330 U.S. 709, the taxability of corporate distributions is to be determined according to the Federal statute. See,

in that connection, *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U.S. 46; *United States* v. *Ogilvie Hardware Co.*, *supra*; *United States* v. *Lesoine*, 203 F. 2d 123.

Under section 115 (a) of the Internal Revenue Code of 1939, a taxable dividend means "any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made." In section 115 (b), it is provided that "[f]or the purposes of this chapter," namely chapter 1, covering the imposition of the income tax, "every distribution is made out of earnings or profits to the extent thereof." According to stipulated facts, Transit, on December 28, 1946, had accumulated earnings or profits in the amount of $89,647.24. On that date, and pursuant to the resolution of its board of directors, it in fact distributed $100,000 to its common stockholders pro rata, which under the provisions of 115 (a) and (b) constituted the payment of a taxable dividend to the extent of $89,647.24, the entire amount of Transit's accumulated earnings or profits as of that date, and we so conclude and hold.

In reaching that conclusion, the facts make it unnecessary to determine whether under reasoning appearing in the court's opinion in *United States* v. *Lesoine*, *supra*, a rescission or refund of the dividend on December 30, 1946, 2 days after its declaration and payment, would have effected a restoration of Transit's earnings or profits. It is true that the directors of Motor Service, the owner of a substantial majority of Transit's common stock, did on that date spread on the corporate minutes a resolution instructing its officers to contribute $100,000 to Transit as capital surplus. But no comparable action was taken by any other of Transit's common stockholders, and there was in fact no actual payment in 1946 by Motor Service of any part of the $100,000 directed by the resolution to be paid to Transit's capital surplus. By entry dated January 1, 1947, Motor Service did treat $24,162.48, representing motor bus and office rentals due and owing to Motor Service by Transit, as having been paid on the said $100,000, and under date of February 28, 1947, made a further entry similarly applying $23,661.92 to the account, leaving as unpaid a balance of $52,175.60. And if ever there have been any further payments, the record does not so show. It follows, we think, that there was in the instant case no rescission of the 1946 dividend declared and paid.

*Decision will be entered for the petitioners.*