BARBARA A. KRAKOWSKI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Krakowski v. Commissioner
Docket No. 16695-91
United States Tax Court
T.C. Memo 1993-266; 1993 Tax Ct. Memo LEXIS 269; 65 T.C.M. (CCH) 2969; June 16, 1993, Filed *269 For petitioner: John Kennedy Lynch. For respondent: John E. Budde. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1987 in the amount of $ 12,759. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The sole issue before the Court is whether petitioner is taxable on an amount of $ 40,000 that was paid to her in 1987 by the former treasurer of her late husband's campaign committee, who had embezzled that amount and more from the campaign funds. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner is a secretary-receptionist-word processor, whose residence at the time she filed her petition in this case was in Cleveland, Ohio. Petitioner is the widow of Jerome F. Krakowski (Krakowski), who had been elected to and served as the Cleveland Clerk of Courts from 1982 until his death. As *270 a candidate for that office, Krakowski received contributions from the public to pay expenses associated with his election and reelection campaigns. These campaign contributions were deposited into the "Krakowski for Clerk Committee" checking account at the Ohio Savings Association. This checking account was established for the deposit of such campaign contributions and for the payment of such campaign expenses. Charles E. Graley (Graley) was the treasurer of Krakowski's campaign committee and was the sole signatory on the campaign committee checking account. Graley was a longtime friend of the Krakowski family and was appointed by Krakowski and served under him as deputy clerk of the Cleveland courts. In early October of 1985, Krakowski was scheduled for surgery. He was somewhat apprehensive about the outcome of that surgery. He drafted a will at that time leaving everything to petitioner. He told petitioner that there was about $ 60,000 in his campaign fund that would be available to take care of her. At that time, it was State and local practice for a candidate to retain for his personal use any unused campaign contributions. At that time, personal use of such funds was *271 not prohibited by State or local law. Krakowski died on April 10, 1986. Unbeknownst to petitioner, during the period from 1982 through 1986, Graley had embezzled $ 57,701.12 from the "Krakowski for Clerk Committee" checking account. After Krakowski's death, Graley told petitioner that the campaign funds were invested in a certificate of deposit (CD) that had not yet come due. Actually, there was less than $ 1,000 in the campaign committee checking account at the time of Krakowski's death, and Graley closed the account shortly after Krakowski's death. For the next few months, Graley tried desperately to obtain funds to replenish the money he had embezzled. In the meantime, Graley assisted petitioner in handling her husband's estate. Petitioner did not have an attorney to advise her at that time. The Estate of Jerome F. Krakowski (the estate), Probate No. 991128, was opened on April 22, 1986, 12 days after Krakowski's death. The estate claimed assets in an amount less than $ 25,000 and filed a nontaxable Ohio Estate Tax Return. The assets claimed on the Ohio Estate Tax Return did not include the campaign funds which petitioner believed were invested in a CD and which she expected *272 to receive as Krakowski's widow when the CD matured. The estate was closed on June 18, 1986, upon an Application for Release of Assets Without Administration. Sometime in late 1986 or early 1987, petitioner met Graley at lunchtime, expecting to go to the bank to "roll over" the CD in which the campaign funds were supposedly invested. Instead Graley confessed to her that he had embezzled the funds, but he promised he would repay the money to her. On August 19, 1987, Graley paid petitioner $ 20,000 which she deposited into a personal bank account and then invested in a CD in her name. Graley had borrowed that $ 20,000 from a bank, apparently representing to the bank that the money was to be used for home improvements. Sometime after August 19, 1987, and before October 28, 1987, an investigative reporter for the local newspaper broke the story about Graley's embezzling the Krakowski campaign funds. On October 28, 1987, Graley paid petitioner another $ 20,000. He obtained those funds from his stepfather and from a female acquaintance. Petitioner also deposited this $ 20,000 in a personal bank account and then invested the funds in a CD in her name. Because Graley had closed *273 the campaign committee bank account shortly after Krakowski's death, the campaign committee account did not exist at the time Graley paid petitioner the $ 40,000. Graley paid the $ 40,000 to petitioner in the belief that petitioner, as sole beneficiary of the estate, would have been entitled to any and all monies remaining in the campaign fund at the time of Krakowski's death. In 1987, Graley was investigated for the falsification of the "Krakowski for Clerk Committee" election reports. On June 22, 1988, Graley was indicted for 10 counts of grand theft of the campaign funds, forgery, and uttering. A court audit of the campaign committee account indicated that Graley had misappropriated in excess of $ 57,000. On November 21, 1988, Graley pleaded guilty to two counts of theft and four counts of forgery. He was sentenced to 9-1/2 years imprisonment. However, the sentence of imprisonment was suspended, and he was placed on probation for 5 years and ordered to make restitution to the Krakowski for Clerk Committee in the amount of $ 17,481.37. The restitution amount reflected the $ 40,000 Graley had already paid to petitioner. On June 15, 1989, the State of Ohio filed a motion to *274 amend judgment, requesting an increase in the amount of restitution. Although, at the time of Krakowski's death, any money remaining in a candidate's campaign fund became property of his estate, by the time Graley paid the $ 40,000 to petitioner in 1987, the State law had been changed. Effective September 17, 1986, campaign committees were prohibited from distributing funds to any person for personal benefit or gain. The Cuyahoga County prosecutor's office successfully argued, therefore, that the $ 40,000 Graley paid to petitioner did not represent restitution of monies Graley misappropriated from the campaign committee. On August 9, 1989, the Ohio court ordered that the amount of Graley's restitution be increased to $ 57,701.12. [1] By that same order, the court appointed J. Ross Haffey (Haffey) as successor treasurer of the Krakowski for Clerk Committee to receive the restitution payments and ordered him to donate the collected restitution to an appropriate charity as defined by law. Graley then initiated a series of actions to force petitioner to return to the campaign committee the $ 40,000 he had paid to her, to be credited against his $ 57,701.12 restitution obligation. *275 On November 14, 1989, the Internal Revenue Service (IRS) contacted petitioner about the $ 40,000 she had received in 1987 and had not reported on her Federal income tax return for that year. Thereafter, her attorney took steps to have the estate reopened. On December 29, 1989, the estate was reopened, and petitioner was appointed as executrix. On May 15, 1990, petitioner filed an Inventory and Appraisal and a Schedule of Assets, which listed the $ 40,000 received from Graley as an asset of the estate. At that time, Graley was still trying to have the $ 40,000 credited against the $ 57,701.12 amount of restitution he had to repay to the committee. On June 14, 1990, Graley filed an *276 exception to the inventory, claiming that the $ 40,000 was not an asset of the estate. In the meantime, the State of Ohio sought to have Graley's probation revoked and his sentence ordered into execution. Under Ohio law, an individual could be placed on probation for a maximum of 5 years. Graley was to remain on probation until restitution had been made in full. Based on his income, Graley could not make complete restitution of the $ 57,701.12 until the year 2050, which meant he could not pay the increased amount of restitution within the maximum 5-year probation period. On July 2, 1990, Graley's probation was revoked, and he was incarcerated in the Lorain Correctional Institution. Although petitioner was present at Graley's parole revocation hearing, she did not volunteer to pay the $ 40,000 over to the campaign committee at that time. Petitioner consulted with her attorney, Matthew Lynch, who advised her of steps she could take so that Graley would receive credit for the $ 40,000. On August 30, 1990, Matthew Lynch acknowledged receipt of two checks from petitioner. Each check was in the amount of $ 20,000, payable to Matthew J.D. Lynch, Trust Account to be conveyed to the *277 Krakowski for Clerk Committee. One check was dated August 29, 1990, and the other was dated August 30, 1990. On September 5, 1990, Matthew Lynch remitted $ 40,000 to Haffey, as successor treasurer of the Krakowski for Clerk Committee. Haffey agreed to accept the $ 40,000 without prejudice to any claim that petitioner may have had, either individually or in her capacity as executrix of the estate. Haffey further agreed to hold the funds for a period of 60 days to allow petitioner to take whatever action she deemed appropriate to enforce her claim, if any, against the committee. On March 1, 1991, the Probate Court granted petitioner's motion to amend the inventory of the estate. Pursuant to the Probate Court's order, the inventory item entitled "Funds Received from Charles Graley" valued at $ 40,000 was changed to "Claim for $ 40,000 from Krakowski for Clerk Committee". On May 24, 1991, petitioner, individually and as executrix of the estate, filed a Complaint for Declaratory Judgment in the Probate Court. In her complaint, petitioner claimed that, at the time of Krakowski's death, a sum in excess of $ 57,701.12 should have remained in the accounts of the campaign committee. *278 Petitioner further claimed that the $ 40,000 which Haffey held constituted a portion of the funds that should have been in the accounts of the campaign committee. She claimed that the $ 40,000, therefore, belonged to the estate and/or petitioner as surviving spouse and Krakowski's sole heir. Petitioner requested that Haffey be ordered to return the $ 40,000 to the estate. Haffey and the Attorney General for the State of Ohio were defendants in the declaratory judgment action. Haffey filed an answer to the complaint on June 5, 1991, and the Attorney General filed an answer on June 10, 1991. The parties to the declaratory judgment action settled the case on December 30, 1991, by agreement whereby petitioner as the executrix of the estate was to receive $ 5,000. Petitioner signed the settlement agreement on December 30, 1991, and payment was to be made within 10 days thereafter. Petitioner received the $ 5,000. [2]
*279 Ultimately, Graley was credited with the $ 40,000 as part of his restitution payments. At the time he testified in this case, Graley was still paying on the balance; he still owed about $ 8,000 of the $ 17,701.12 balance. No amended State of Ohio estate tax return was filed after the estate was reopened. No U.S. Fiduciary Income Tax Return (Form 1041) has ever been filed on behalf of the estate. OPINION Positions of the Parties
In the notice of deficiency, respondent determined that $ 40,000 of "unreported campaign funds" received by petitioner from Graley in 1987 constituted taxable income to petitioner in 1987 under sections 61 and 691. In her trial memorandum, petitioner argued (1) that payments of assets of a decedent's estate to the fiduciary of the estate are not income to the individual fiduciary, (2) that funds paid to an estate that are claimed as funds belonging to an election committee or to the State of Ohio are not assets or income to the estate or heirs, until the issue is decided by the Probate Court, and (3) that settlement between the parties, accepted by the Probate Court, disposes of the issue by way of collateral estoppel. In her opening brief, petitioner *280 apparently abandoned the arguments made in her trial memorandum. Instead, she argued that the $ 40,000 she received from Graley was not income to her because the funds were not "campaign funds". In the alternative, petitioner argued that, if the funds were campaign funds, then they were not taxable to her either because she received them as a constructive trustee or because Graley exercised dominion and control over the funds. Finally, petitioner argued that the funds were an asset of her husband's estate and, therefore, an inheritance excluded from taxation under section 102. For the reasons set forth below, we are not persuaded by any of petitioner's arguments. The $ 40,000 Constitutes Income in Respect of a Decedent
Section 61 includes in gross income all income from whatever source derived unless otherwise specifically excluded. Section 691(a) governs the taxation of "income in respect of a decedent". Although the statute does not define "income in respect of a decedent", section 1.691(a)-1(b), Income Tax Regs., provides the following definition: (b) General definition. In general, the term "income in respect of a decedent" refers to those amounts to which a *281 decedent was entitled as gross income but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death or for a previous taxable year under the method of accounting employed by the decedent. * * * Thus, the term includes: (1) All accrued income of a decedent who reported his income by use of the cash receipts and disbursements method; (2) Income accrued solely by reason of the decedent's death in case of a decedent who reports his income by use of an accrual method of accounting; and (3) Income to which the decedent had a contingent claim at the time of his death.
The United States Court of Appeals for the Sixth Circuit, to which any appeal in this case would lie, has held that "entitled", as used in the regulation, contemplates that the decedent must have had a "right" to the income. Keck v. Commissioner, 415 F.2d 531 (6th Cir. 1969), revg. 49 T.C. 313 (1968). The Sixth Circuit, however, has rejected the view that the right had to have been legally enforceable in order for income to be taxed under section 691. Rollert Residuary Trust v. Commissioner, 752 F.2d 1128 (6th Cir. 1985), *282 affg. 80 T.C. 619 (1983). The substantial likelihood that the decedent would receive the income is sufficient. Id. at 1132. The key test for determining whether a decedent had a "right" or was "entitled" to the income is based on the likelihood, at the time of his death, that he would receive the income, not on his legal rights to it. Id. See also Halliday v. United States, 655 F.2d 68, 72 (5th Cir. 1981). In this case, at the time of Krakowski's death and prior to September 17, 1986, it was common State and local practice for a candidate to retain for his personal use any unused campaign funds. Any such funds remaining at the time of the candidate's death went to his estate. Therefore, at the time of his death, Krakowski had a right to any remaining campaign funds. Furthermore, since the campaign committee had the right to have Graley repay the embezzled funds, Krakowski also had a "right" and was "entitled" to the embezzled funds within the meaning of section 691. Therefore, the $ 40,000 Graley repaid to petitioner constitutes income in respect of a decedent and is taxable under *283 section 691. [3]
*284 The $ 40,000 Is Taxable to Petitioner in 1987
Petitioner argues that the $ 40,000 Graley paid her was an inheritance excluded from income under section 102(a). Section 102(a) excludes from gross income property acquired by gift, bequest, devise, or inheritance. Section 102(a), however, does not exclude (1) income from a gift, bequest, devise, or inheritance or (2) where the gift, bequest, devise, or inheritance is of income from property, the amount of such income. Sec. 102(b). At best, petitioner inherited the right to income which is not excluded under section 102(a). Furthermore, to the extent section 102(a) conflicts with section 691, section 691 must take precedence as the specific statutory scheme for the taxation of income in respect of a decedent. Cf. Rollert Residuary Trust v. Commissioner, 80 T.C. 619, 644 (1983), affd. 752 F.2d 1128 (6th Cir. 1985). Section 691(a) provides that income in respect of a decedent is not included in the decedent's final income tax return. Instead, the income is reported when received by the person who actually receives the income. Section 691(a)(1) provides: (a) *285 Inclusion in Gross Income. -- (1) General Rule. -- The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of: (A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent; (B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or (C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.
In this case, Graley paid the $ 40,000 to petitioner because he believed she was entitled to the funds as Krakowski's *286 surviving spouse. Petitioner deposited the money into her personal bank account and then used the funds to purchase CD's in her name. There is no indication on the bank account or the CD's that petitioner received the $ 40,000 in any capacity other than her individual capacity. The estate was closed on June 18, 1986. Petitioner received the first $ 20,000 from Graley on August 19, 1987, and the second $ 20,000 on October 28, 1987. The estate was not reopened until December 29, 1989, shortly after the IRS had contacted petitioner about her failure to report the $ 40,000 on her 1987 return. Therefore, petitioner did not receive the funds as the executrix of her husband's estate; she received the funds in her individual capacity. Subparagraph (C) of section 691(a)(1) requires petitioner to include the $ 40,000 in her income in 1987, the year she received the money from Graley. Claim of Right Doctrine.
Apart from section 691, the $ 40,000 is taxable to petitioner under section 61 and the claim of right doctrine. Income received under a claim of right is taxable in the year received even though the recipient may be under a contingent obligation to return it at a later time. *287 North American Oil Consolidated v. Burnet, 286 U.S. 417 (1932). [4] There is a claim of right when income is received and treated by a taxpayer as belonging to him. Healy v. Commissioner, 345 U.S. 278 (1953). "The mere fact that income received by a taxpayer may have to be returned at some later time does not deprive it of its character as taxable income when received." Woolard v. Commissioner, 47 T.C. 274, 279 (1966). The claim of right doctrine applies "notwithstanding that the taxpayer may be under a contingent obligation to restore the funds at some future point." Professional Insurance Agents of Michigan v. Commissioner, 78 T.C. 246, 270 (1982), affd. 726 F.2d 1097 (6th Cir. 1984). *288 The claim of right doctrine, however, does not encompass the mere possession of income that the taxpayer admits belongs to another and that he intends to surrender to its proper owner. United States v. Merrill, 211 F.2d 297 (9th Cir. 1954). To avoid the application of the claim of right doctrine, however, the recipient must at least recognize in the year of receipt "an existing and fixed obligation to repay the amount received and make provisions for repayment." Hope v. Commissioner, 55 T.C. 1020, 1030 (1971), affd. 471 F.2d 738 (3d Cir. 1973), cert. denied 414 U.S. 824 (1973). Neither of these requirements is satisfied in this case. When Graley paid the $ 40,000 to petitioner in 1987, Graley gave up dominion and control over the funds. When petitioner received the $ 40,000 from Graley in 1987, she obtained full dominion and control over the funds. At that time, the estate had been closed, and the campaign committee bank account had been closed. When petitioner received the funds, she treated the funds as her own and purchased CD's in her own name. Although, *289 at the time she received the money from Graley, State law prohibited a candidate from using campaign funds for personal purposes, petitioner was not aware of the enactment of that law. There is no evidence that she recognized, in 1987, any obligation to repay the funds. Moreover, petitioner made no "provisions for repayment" in 1987. Income is possessed under a "claim of right", and the doctrine is applicable, even if the taxpayer is mistaken as to the validity of his claim. James v. United States, 366 U.S. 213 (1961), overruling Commissioner v. Wilcox, 327 U.S. 404 (1946); United States v. Lewis, 340 U.S. 590 (1951). There is an exception to the doctrine, however, if in the year of receipt the taxpayer discovers his mistake, effectively renounces his claim to the funds received, and recognizes his obligation to repay the funds. United States v. Merrill, supra.If the taxpayer does not discover his mistake, renounce his claim, and recognize his obligation to repay until a later taxable year, he cannot take refuge in this exception. Gaddy v. Commissioner, 38 T.C. 943, 949 (1962), *290 affd. on this issue, revd. and remanded on another issue 344 F.2d 460 (5th Cir. 1965). When petitioner received the funds from Graley, she believed that the law entitled her to any funds remaining in the campaign committee account at the time of her husband's death. Because the embezzled funds should have been in the campaign committee account when her husband died, petitioner believed she was entitled to the funds. Although the State law had changed by the time Graley paid the $ 40,000 to petitioner, she did not discover her mistake, renounce her claim, or recognize an obligation to repay during 1987. Therefore, the possibility that she was mistaken as to her right to the funds does not prevent the application of the claim of right doctrine. Another exception applies to the claim of right doctrine where there is a restriction on the taxpayer's use of the funds. Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203 (1990). The rationale for this exception is that, when the taxpayer is not free to dispose of the income, he does not enjoy the economic benefit of possessing it; he has not realized gain in a practical *291 sense. Petitioner's right to use the funds at the time she received them (and any limitations on that right at such time) determines their taxability. Angelus Funeral Home v. Commissioner, 47 T.C. 391 (1967), affd. 407 F.2d 210 (9th Cir. 1969), cert. denied 396 U.S. 824 (1969). Petitioner's right to use the funds for any purpose to her benefit would make them taxable to her. Id.
Petitioner's argument that her use of the funds was restricted because she received the funds as a "constructive trustee" is without merit. The "restriction on use" exception does not extend to constructive trusts. Healy v. Commissioner, 345 U.S. 278 (1953); United States v. Lesoine, 203 F.2d 123 (9th Cir. 1953); Haberkorn v. United States, 173 F.2d 587 (6th Cir. 1949). [5]
*292 The absence of an unequivocal contractual, statutory, or regulatory duty to repay, coupled with the fact that petitioner's disposition and use of the $ 40,000 was not restricted in any way, mandates applying the claim of right doctrine in this case. Carlstedt Associates, Inc. v. Commissioner, T.C. Memo 1989-27. We hold, therefore, that petitioner must include as taxable income in 1987 the $ 40,000 she received from Graley in that year. [6]
*293 To reflect the foregoing holdings, Decision will be entered for respondent.
Footnotes
1. The original amount of $ 17,481.37 increased by $ 40,000 is $ 57,481.37. The record does not explain the discrepancy between this amount and $ 57,701.12. However, the parties in this case have stipulated that Graley embezzled $ 57,701.12 from the Krakowski for Clerk Committee bank account, and the Court accepts that stipulation.↩
2. Petitioner and respondent stipulated that petitioner received $ 5,000. However, the "Settlement Agreement" indicates "Barbara Krakowski, as Executrix of the estate of Jerome P. Krakowski" received the $ 5,000.↩
3. This conclusion is further supported by sec. 527. If a political organization expends funds for the personal use of an individual, that individual is in receipt of income. Sec. 1.527-5(a), Income Tax Regs. Also any excess funds after a campaign or election are treated as expended for the personal use of the person having control over the ultimate use of such funds. Sec. 1.527-5(c)(1), Income Tax Regs.Sec. 1.527-5(c)(2), Income Tax Regs., further provides: Where excess funds are held by an individual who dies, and these funds go to the individual's estate or any other person (other than an organization or fund described in paragraph (b) of this section), the funds are income of the decedent and will be included in the decedent's gross estate unless the estate or other person receiving such funds transfers the funds within a reasonable period of time in accordance with paragraph (b) of this section.
Paragraph (b) of sec. 1.527-5, Income Tax Regs., provides: (b) Certain uses not treated as income to a candidate. Except as otherwise provided in paragraph (a) of this section, if a political organization -- (1) Contributes any amount to or for the use of any political organization described in section 527(e)(1) or newsletter fund described in section 527(g), (2) Contributes any amount to or for the use of any organization described in paragraph (1) or (2) of section 509(a) which is exempt from taxation under section 501(a), or (3) Deposits any amount in the general fund of the U.S. Treasury or in the general fund of any State or local government, such amount shall not be treated as an amount expended for the personal use of a candidate or other person. * * *↩
Thus, any funds remaining in Krakowski's campaign committee account at the time of his death (or recoverable by that committee) constituted income of a decedent.
4. In North American Oil Consolidated Co. v. Burnet, 286 U.S. 417↩ (1932), the parties conceded that the net profits earned by the property during the receivership constituted income. The claim of right doctrine relates only to taxation of income. The doctrine only applies when the property received is, in fact, income subject to tax. The receipt of money by a borrower in a loan transaction or by a donee of a gift, therefore, is excluded from the doctrine. Here, the $ 40,000 was neither a loan nor a gift to petitioner.
5. In Healy v. Commissioner, 345 U.S. 278, 282-283 (1953), the Supreme Court stated: A constructive trust is a fiction imposed as an equitable device for achieving justice. It lacks the attributes of a true trust, and is not based on any intention of the parties. Even though it has a retroactive existence in legal fiction, fiction cannot change the "readily realizable economic value" and practical "use and benefit" which these taxpayers enjoyed during a prior annual accounting period, antecedent to the declaration of the constructive trust. [Fn. refs. omitted.]↩
6. Although petitioner must include the $ 40,000 in her taxable income for 1987, she may be able to deduct the subsequent repayment in the taxable year in which the repayment was made. See United States v. Lewis, 340 U.S. 590 (1951); Krim-Ko Corp. v. Commissioner, 16 T.C. 31, 40 (1951). Furthermore, if a deduction in the year of the restoration would not make petitioner whole due to a lesser amount of income or lower tax rates, section 1341 should alleviate some of the harsh effects of the claim of right doctrine in such situation. United States v. Skelly Oil Co., 394 U.S. 678, 681 (1969). Because the repayment exceeds $ 3,000, sec. 1341 allows petitioner to choose, in the year of repayment, between a deduction for the amount of the repayment ($ 35,000) and, in effect, a credit for the amount of tax that would have been saved in 1987 (the year of inclusion) if the repaid amount had been excluded from petitioner's gross income in 1987. Nordberg v. Commissioner, 79 T.C. 655, 664-665 and n.8 (1982), affd. without published opinion 720 F.2d 658 (1st Cir. 1983). In the event the reduction exceeds petitioner's tax liability for the year of repayment, the excess is treated as a payment of tax on the last day prescribed by law for the payment of tax for the taxable year of the repayment and is refunded or credited in the same manner as an overpayment for such year. Sec. 1341(b)(1). Of course, the predicate for application of sec. 1341 is that "an item was included in gross income for a prior taxable year", sec. 1341(a)(1)↩, the very issue controverted here. However, provided the period of limitations has not expired for the year of repayment, petitioner may be entitled to obtain the benefit of the deduction or credit allowed because of the repayment.